## UNITED STATES v. STEPHAN.
### No. 26619.

District Court, E. D. Michigan, S. D.

May 22, 1943.

———◆———

See, also, D.C., 50 F.Supp. 448.

John C. Lehr, U. S. Atty., and John W. Babcock, Asst. U. S. Atty., both of Detroit, Mich., for plaintiff.

Nicholas Salowich, of Detroit, Mich., and James E. McCabe, of Nashville, Tenn., for defendant.

TUTTLE, District Judge.

This is a motion for a new trial. After a trial in this Court, the defendant was found guilty of the crime of treason by a jury on July 2, 1942. On July 3, 1942, de-

fendant filed a motion for a new trial, which, after oral arguments, was denied on July 13, 1942. On August 6, 1942, the defendant was sentenced to death. An appeal was taken to the Circuit Court of Appeals for the Sixth Circuit. By order of this Court, the record on appeal was not reduced to narrative form, but was reproduced in its entirety in order that the reviewing court might have a complete and accurate picture of all that transpired in this court. The appeal was heard by five judges of the Circuit Court of Appeals, which by a unanimous decision affirmed the judgment of this Court. Stephan v. United States, 6 Cir., 133 F.2d 87. A petition for certiorari was filed with the Supreme Court on March 4, 1943, and was denied by that court on April 5, 1943, 63 S.Ct. 858, 87 L.Ed. ——. After the filing of the present motion for a new trial on April 28, 1943, opportunity was extended by this Court to the defendant and the government to submit written arguments and affidavits in support of and in opposition to the motion, which has been done. In addition, the defendant, on May 10, 1943, filed along with his argument a supplement to the motion for a new trial, claiming an additional ground therefor.

The original motion of April 28, 1943, now before the Court, alleges twelve grounds for a new trial, but they may all be grouped and dealt with under three headings: (1) The claim of newly-discovered evidence of a material character pertaining to one William Nagel; (2) the claim of defendant that the order admitting him to citizenship was void, and that he could not therefore commit the crime of treason; (3) the claim that there were numerous defects in the indictment and errors in the trial of this case. The supplement to the motion sets up a fourth ground for a new trial, namely, the claim that newly-discovered evidence shows that the government was guilty of entrapment, constituting a defense to the crime. These claims will be considered in order.·

1. Rule 2(3) of the Rules of Criminal Procedure After Verdict, 18 U.S.C.A. following section 688, provides that in capital cases a motion for a new trial on the ground of newly-discovered evidence may be made at any time before execution of the judgment. The claim of newly-discovered evidence here pertains to an alleged conversation between defendant and William Nagel on April 18, 1942. However, the motion here made (including the arguments and affidavits in its support) does not show that any new evidence has been discovered by the defendant since the trial. There is no showing that any new witness has been discovered, or what testimony would be given at a new trial if one were granted. The only statements in the various papers filed by defendant bearing upon this question are as follows: The statement in the affidavit of his counsel that defendant himself would swear to the truth of the claim; the statement in the affidavit of defendant that he believes Nagel will testify truthfully as to the conversation when placed on the stand; and the affidavit of his counsel that one Erna Schwartz stated to him that Nagel was in defendant's restaurant at the time the conversation is claimed to have taken place. The allegations of the motion are so vague and indirect that they would not be considered by this court, except for the severe penalty which has been imposed upon the defendant. From what occurred at the trial, from a letter written by the defendant to the Judge of this Court on April 17, 1943 (which is on file in the case), and from the conclusions of counsel based upon hearsay and stated in the motion, this Court will assume that defendant intends to make the following claim: That after defendant met Krug, a lieutenant in the German army, who had escaped from a Canadian prison, and after defendant had aided Krug with money, clothing, and other things needed for his concealment and escape, and while the defendant was concealing Krug at the Field Hotel for the night of Saturday, April 18, 1942, and while defendant was planning to send Krug to Chicago on the following morning of Sunday, April 19, 1942, one William Nagel came to the restaurant of the defendant; that defendant then told Nagel what had happened and asked Nagel's advice; that Nagel advised defendant that, as Krug would be captured anyway, he should help him to get to Chicago; that Nagel then gave defendant three dollars to help him send Krug to Chicago; and that as a result of Nagel's advice defendant sent Krug to Chicago by bus rather than by train, as defendant had originally planned.

This conversation between defendant and Nagel (assuming that it occurred) cannot by any stretch of the imagination be considered newly-discovered evidence. The defendant, of course, knew of the conversation from the beginning; and, in fact, related it in a written statement made to an

agent of the Federal Bureau of Investigation two days after it occurred, which statement was introduced in evidence by the government at the trial. The present claim only amplifies, and does not alter, the essential features of the claim made in that statement, the principal addition being the claim that Nagel contributed three dollars to Krug's bus fare. Thus, the claim of the defendant was known to his counsel, counsel for the government, the jury, and this Court at the trial. There is, therefore, nothing new about the claim itself; and there is no showing that if a new trial were granted it could be proved by any witness other than defendant, or that he could testify as to anything not known to him at the time of the trial. The claimed incident could not be proved by Nagel, because from an affidavit made by him on May 13, 1943, and filed in this cause, it is shown that, while admitting that he had a conversation with defendant at the time claimed, he would deny completely the statements of defendant as to its substance. In fact, while it was not shown at the trial, it was well known to defendant, his counsel, the United States Attorney, and the Presiding Judge that Nagel had been thoroughly interviewed by the agents of the Federal Bureau of Investigation and that he had denied defendant's statements as to the substance of the conversation and would so testify if called as a witness.

Likewise, there is no showing that the claim could be proved by Erna Schwartz; the most that is claimed by defendant's counsel in his affidavit is that she told him Nagel was in the restaurant on the evening in question, a fact which is not denied. There is nothing to show that she overheard any of the conversation between Stephan and Nagel or could give any testimony as to its substance.

■ Even if, however, the claim now made were true and there were newly-discovered evidence to prove it, it would afford no basis for a new trial, because it would be immaterial. It is elementary that a new trial can be granted for newly-discovered evidence only when it is material to the result. 23 C.J.S., Criminal Law, § 1456. The claim here, however, is of the kind which, if true, would not lessen defendant's guilt, but would at most only make Nagel a party to the crime. Of course, the fact that one undertakes a crime upon the advice of another does not constitute a defense to prosecution for it,

where no element of duress or compulsion is present. 22 C.J.S., Criminal Law, §§ 39 and 44. But we do not even have a situation of that kind here, because the crime of treason by defendant was complete before the time he claims to have talked to Nagel. Of the thirteen overt acts alleged in the indictment, only the last one occurred after the alleged conversation. (Even as to the thirteenth overt act—essentially, the act of putting Krug upon a public conveyance bound for Chicago—defendant related in his written confession, introduced in the trial and not now claimed to be incorrect, that he intended to send Krug away on the train on the afternoon of the 18th and did not do so only because he found it was too late to make the train. Thus, so far as the intention of defendant is concerned, none of the overt acts were affected by the alleged advice of Nagel.) All the claim amounts to is that a prominent citizen has put his stamp of approval upon a crime already committed. This obviously constitutes no defense.

From a practical viewpoint, the real significance of this branch of the motion is that the defendant has discovered no new facts since the trial nor any new witness to prove facts already known. The most that can be said is that defendant did not take the witness stand upon the trial and was convicted; and that he now wants a new trial so that he can take the stand and tell the court that a prominent citizen was also involved in his guilt. The conclusion of this Court is that the claim made here does not even remotely approach proper grounds for a new trial based upon newly discovered evidence.

■ 2. At the trial, it was shown that defendant had been admitted to citizenship on June 24, 1935. Investigation of the defendant's record by the probation officers after the trial for the information of the court in imposing sentence disclosed that defendant had secured his citizenship through fraud. The details of the fraud (which consisted of material misstatements under oath as to the residence of the defendant) were stated by the Judge in open court in the presence of the defendant prior to passing sentence. Defendant now urges that under Title 8 of the United States Code Annotated, Section 738, the order admitting him to citizenship was subject to revocation for fraud, upon a proceeding instituted by the government; that even in the absence of such action the order was void;

and that as an alien he could not commit the crime of treason. Of course, there is no element of newly discovered evidence in this claim, as the defendant knew at all times the facts pertaining to his fraud. However, even if it had been relied upon as a defense at the trial, it would not have helped the defendant. Defendant applied for citizenship and took the oath of allegiance voluntarily. It is self-evident that fraud in procuring the order of naturalization, although a ground for its cancellation, does not render it void but only voidable; and that until such time as his citizenship is revoked, such fraud does not lessen his obligations and duties to this country or relieve him of the solemn undertakings he made in his oath of allegiance.

■ 3. The numerous claims relative to defects in the indictment and the errors alleged to have been committed during the trial have been passed upon by this Court in denying the previous motion for a new trial, by the Circuit Court of Appeals in its opinion affirming this Court, and by the Supreme Court in denying the writ of certiorari. They are without merit and are now res adjudicata.

■ 4. The claim of newly discovered evidence giving rise to the defense of entrapment is based upon alleged evidence disclosed for the first time in the trial of the United States v. Donay, recently held in this District Court, that government officers were informed at 6:03 P. M. on April 18, 1942, that Krug was in the company of the defendant, Stephan, and that, although they could have done so, they failed to apprehend Krug prior to his leaving Detroit. Assuming the truth of these factual allegations, however, it is clear that they do not even remotely make out a case of entrapment. To quote from the concurring opinion of Mr. Justice Roberts in the leading case of Sorrells v. United States, 287 U.S. 435, 453, 53 S.Ct. 210, 217, 77 L.Ed. 413, 86 A.L.R. 249 cited by defendant, "Entrapment is the conception and planning of an offense by an officer, and his procurement of its commission by one who would not have perpetrated it except for the trickery, persuasion, or fraud of the officer." There is no claim here that any government officer in any way procured Krug's visit to Detroit or urged or encouraged Stephan in any way to assist him. The claim here is based upon pure inaction by the government—upon its failure to step in and affirmatively stop Stephan from continuing with the commission of his crime. The doctrine of entrapment is based upon the feeling that it is unjust for the government to get a person to commit a crime he would not otherwise have committed and then secure his punishment for it. No action of the government which led the defendant Stephan to give assistance to Krug is suggested here. In fact, if the government had done as defendant suggests, and apprehended Krug on the evening of the 18th, it would not have affected his guilt, as the crime of treason on his part was then already complete.

The motion for a new trial should be denied, and an order pursuant to this opinion will be entered.