PEOPLE *v.* SINCLAIR

OPINION OF THE COURT

1. CRIMINAL LAW—NARCOTICS—POSSESSION OF NARCOTICS—POLICE POWER.

Statute prohibiting the possession of narcotic drugs is an exercise of the police power of the state and is designed to protect the public health, safety, and welfare (MCLA § 335-.153).

2. CRIMINAL LAW—CONSTITUTIONAL LAW—NARCOTICS—POSSESSION OF MARIJUANA.

Inclusion of marijuana in the statute prohibiting the possession of narcotic drugs does not offend either the equal protection or the due process clauses of the Fourteenth Amendment (US Const, Am 14; MCLA § 335.153).

3. CRIMINAL LAW—NARCOTICS—DEFINITION.

A narcotic is a drug which in moderate doses allays sensibility, relieves pain, and produces profound sleep, but which in poisonous doses produces stupor, coma, or convulsions.

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 15, 21]   25 Am Jur 2d, Drugs, Narcotics, and Poisons §§ 16, 17.
[3]   25 Am Jur 2d, Drugs, Narcotics, and Poisons §§ 1, 2.
[4–6]   25 Am Jur 2d, Drugs, Narcotics, and Poisons §§ 16, 17.
[7]   5 Am Jur 2d, Arrest §§ 2, 76, 77.
[8, 9]   5 Am Jur 2d, Arrest § 2.
[10]   5 Am Jur 2d, Arrest § 2.
[11, 12]   21 Am Jur 2d, Criminal Law § 143.
   25 Am Jur 2d, Drugs, Narcotics, and Poisons § 43.
[13–15]   21 Am Jur 2d, Criminal Law §§ 610–615.
[16]   21 Am Jur 2d, Criminal Law §§ 221, 222, 234–240.
   47 Am Jur 2d, Jury §§ 27, 267.
[17, 18]   47 Am Jur 2d, Jury § 141.
[19]   47 Am Jur 2d, Jury § 145.
[20]   21 Am Jur 2d, Criminal Law § 1 *et seq.*
[22]   25 Am Jur 2d, Drugs, Narcotics, and Poisons §§ 16, 17, 21.
[23]   21 Am Jur 2d, Criminal Law § 231.

4. CRIMINAL LAW—STATUTES—POSSESSION OF MARIJUANA—HARM-
FULNESS—LEGISLATIVE DETERMINATION.

  Determination that marijuana is a harmful substance is for
  the legislature; if the relationship between the statute making
  possession of marijuana illegal and the public welfare is de-
  batable, the legislative judgment must be accepted (MCLA
  § 335.153).

5. CRIMINAL LAW—NARCOTICS—POSSESSION OF MARIJUANA—EXCLU-
SION OF OTHER DRUGS—CONSTITUTIONAL LAW.

  Exclusion of other drugs, such as alcohol, from the statute mak-
  ing possession of marijuana illegal does not violate the equal
  protection or due process clauses of the Fourteenth Amend-
  ment, because a statute need not be all-embracing and because
  the state may direct its legislation against what it deems to
  be an existing evil without covering the entire field of possible
  abuses (US Const, Am 14; MCLA § 335.153).

6. CRIMINAL LAW—NARCOTICS—POSSESSION OF MARIJUANA—CONSTI-
TUTIONAL LAW—FIRST AMENDMENT RIGHTS.

  No First Amendment rights are present when dealing with a stat-
  ute making possession of marijuana criminal (US Const, Ams
  1, 14; MCLA § 335.153).

7. ARREST—DELAY—UNDUE PREJUDICE—DUE PROCESS.

  Undue prejudice which results from a delay in the defendant's
  arrest is a denial of due process.

8. ARREST—DELAY—PERMISSIBLE DELAY.

  A delay in the arrest of a suspect is permissible where the delay
  is explainable, is not deliberate, and no undue prejudice at-
  taches to the defendant.

9. CRIMINAL LAW—POSSESSION OF MARIJUANA—ARREST—DELAY—
JUSTIFIABLE DELAY.

  A 33-day delay between defendant's illegal possession of mari-
  juana and his arrest was justified where the police agents
  who had investigated the defendant were conducting extensive
  undercover operations as to other persons in the general area
  and did not desire to reveal their identities prematurely.

10. ARREST—RIGHT TO BE ARRESTED—CONSTITUTIONAL LAW—BASIS.

  A suspect has no constitutional right to be arrested, because the
  police are not required to guess at their peril the precise mo-
  ment at which they have probable cause to arrest the suspect
  and because the police are under no constitutional duty to
  halt a criminal investigation the moment they have the mini-

mum evidence to establish probable cause, a quantum of evidence which may fall far short of the amount necessary to support a criminal conviction.

11. CRIMINAL LAW—ENTRAPMENT—PRE-EXISTING ILLEGALITY.

There can be no entrapment when the criminal activity pre-exists the unlawful inducement.

12. CRIMINAL LAW—ENTRAPMENT—EFFECT—EXCLUSION OF EVIDENCE.

The defense of entrapment affects the substance of the charge and is not a ground for excluding evidence.

13. CRIMINAL LAW—POSSESSION OF MARIJUANA—SENTENCES—CRUEL AND UNUSUAL PUNISHMENT.

A nine and one-half to ten-year sentence imposed upon a defendant following his conviction for illegal possession of marijuana was not cruel or unusual punishment where the statute under which the defendant was convicted provides a maximum penalty of ten years for the first offense (US Const, Am 8; Const 1963, art 1, § 16; MCLA § 335.153).

14. CRIMINAL LAW—SENTENCES—MARIJUANA—CRUEL AND UNUSUAL PUNISHMENT—VIOLATIONS.

Sentences within the statutory maximum for violation of anti-marijuana statutes are not violative of the constitutional prohibition against cruel and unusual punishments (MCLA § 335-.153).

15. CRIMINAL LAW—MARIJUANA OFFENSES—SCIENTIFIC DISPUTE—CRUEL AND UNUSUAL PUNISHMENT.

The current uncertain state of scientific knowledge of marijuana does not justify striking down anti-marijuana law on cruel and unusual punishment grounds.

16. CRIMINAL LAW—IMPARTIAL JURY—CONSTITUTIONAL LAW.

The right to an impartially selected jury as secured by the Fourteenth Amendment to the Federal Constitution does not entitle one accused of a crime to a jury tailored to the circumstances of his particular case.

17. JURY—SELECTION—VOTER REGISTRATION ROLLS.

The use of voter registration rolls to obtain candidates for jury duty presents the most exhaustive means available to secure as wide and as varied a random sample of the community as possible.

18. Jury—Selection—Source of Jury Lists—Requirement.

The states are free to choose the source of jury lists so long as the source reasonably reflects a cross-section of the population suitable in character and intelligence for that civic duty.

19. Jury—Selection—Voter Registration Lists—Requirements.

Exclusive reliance on voter registration lists as the basis for selection of jurors is permissible unless it appears that there is systematic and intentional exclusion from those lists of a particular economic, social, racial, or political group.

Concurring Opinion by Bronson, J.

20. Criminal Law—Theory.

*Law and order will prevail only so long as the public has respect for that concept and only so long as there is a rational relationship between conduct forbidden and the alleged evil to be curbed.*

21. Criminal Law—Narcotics—Marijuana—Reduction of Penalties—Purpose.

*Marijuana penalties should be reduced in order to free police manpower for law enforcement activities which will better control and curtail crimes of violence; during these times of rising crime and limited law enforcement personnel, society can no longer afford the luxury of predicating our priorities upon marijuana laws which injure no innocent party, do no damage to property, and apparently do not denigrate the users themselves.*

22. Criminal Law — Narcotics — Marijuana — Possession — Selective Enforcement—Statutes.

*Statute making possession of marijuana punishable by ten years imprisonment which is not only bottomed on questionable medical evidence but also is violated with impunity by a large and growing segment of the population, permits only enforcement so selective that but a handful of the violators become known, apprehended, charged, tried, and convicted, and only an infinitesimal percentage incarcerated.*

23. Criminal Law — Enforcement — Selective Enforcement — Court's Duty.

*Courts should not permit any citizen's rights to be abridged by highly selective enforcement of a law commonly violated in order to curb unrelated activities.*

Appeal from Recorder's Court of Detroit, Robert J. Colombo, J. Submitted Division 1 October 9, 1970, at Detroit. (Docket No. 7814.) Decided February 16, 1971. Leave to appeal granted August 31, 1971, 385 Mich 786.

John A. Sinclair was convicted of possession of marijuana. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Angelo A. Pentolino,* Assistant Prosecuting Attorney, for the people.

*Philo, Maki, Ravitz, Glotta, Adelman, Cockrel & Robb* and *Sheldon Otis,* for defendant.

Before: Lesinski, C. J., and Bronson and Engel,* JJ.

Lesinski, C. J. Defendant John Sinclair was convicted by a jury of illegal possession of marijuana (MCLA § 335.153 [Stat Ann 1957 Rev § 18.1123]), and was sentenced to a prison term of 9–1/2 to 10 years. He appeals as of right.

On December 22, 1966, defendant gave two marijuana cigarettes to undercover policemen. He was arrested 33 days later.

Prior to trial, defendant challenged the constitutionality of the statute prohibiting the unlawful sale and possession of marijuana by raising issues of equal protection of law, due process of law, and the right to privacy. A special three-judge panel found the statute constitutional.

Defendant was originally charged with both possession and sale of narcotics. The trial court sus-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

tained a motion to dismiss the charge of illegal sale on the ground of entrapment. Defendant moved to suppress the two cigarettes on the ground that they were seized by reason of the illegal entrapment. This motion was denied.

The statute prohibiting the possession of narcotic drugs is an exercise of the police power of the state designed to protect the public health, safety, and welfare. See *People* v. *Baker* (1952), 332 Mich 320. The inclusion of marijuana in that statute does not offend equal protection or due process of law. *People* v. *Stark* (1965), 157 Colo 59 (400 P2d 923). A narcotic, as defined in Webster's Third New International Dictionary, p 1503, is "a drug  *  *  *  that in moderate doses allays sensibility, relieves pain, and produces profound sleep but that in poisonous doses produces stupor, coma, or convulsions". The evidence advanced by both the defendant and the prosecution showed that marijuana possesses those properties. We recognize the difference of medical opinion over the proscription against marijuana; however, the determination that marijuana is a harmful substance is for the legislature. The presumption of constitutionality favors validity of the statute. If the relationship between the statute and the public welfare is debatable, the legislative judgment must be accepted. *Grocers Dairy Company* v. *Department of Agriculture Director* (1966), 377 Mich 71.

The exclusion of other drugs, such as alcohol, from the statute does not violate equal protection or due process of law. As stated in *Kelley* v. *Judge of Recorder's Court of Detroit* (1927), 239 Mich 204, 215:

"A statute does not violate the equal protection clause merely because it is not all-embracing.  *  *  *  A State may properly direct its legislation against what it deems an existing evil without covering the

whole field of possible abuses. \* \* \* The statute must be presumed to be aimed at an evil where experience shows it to be most felt, and to be deemed by the legislature coextensive with the practical need; and is not to be overthrown merely because other instances may be suggested to which also it might have been applied."

In the instant case, it is clear that the legislature has determined the danger of marijuana, and other crimes linked with it, is sufficient to justify the prohibition. The exclusion of alcohol, or other drugs, from the statute does not make marijuana any less dangerous.

Defendant relies on *Stanley* v. *Georgia* (1969), 394 US 557 (89 S Ct 1243, 22 L Ed 2d 542), in his argument that possession of marijuana in the home is protected by the right of privacy. The *Stanley* case held that the First and Fourteenth Amendments to the Federal Constitution prohibit making private possession of obscene material a crime. Defendant's confidence in *Stanley, supra,* is misplaced. In a footnote to that opinion, at 568, the United States Supreme Court cautioned that:

"What we have said in no way infringes upon the power of the State or Federal Government to make possession of other items, such as narcotics, firearms, or stolen goods, a crime. \* \* \* No First Amendment rights are involved in most statutes making mere possession criminal."

Correspondingly, we find no First Amendment rights involved with possession of marijuana.

Defendant argues that the 33-day delay between the alleged commission of the crime and his subsequent arrest denied him due process of law. *People* v. *Hernandez* (1968), 15 Mich App 141, 147, held that undue prejudice which results from a delay in the arrest of a suspect is a denial of procedural due

process. However, a delay is permissible "(1) when the delay is explainable, (2) when it is not deliberate, (3) where no *undue* prejudice attaches to the defendant". We find no such prejudice in the instant case. Defendant was not denied access to critical evidence.

The tardiness of the police in arresting defendant was justified. The two police agents were conducting extensive undercover operations as to other persons in the general area and did not desire to reveal their identities prematurely. *People* v. *Rios* (1970), 27 Mich App 54. *People* v. *Albert White* (1970), 27 Mich App 432.

Furthermore, as stated in *Hoffa* v. *United States* (1966), 385 US 293, 310 (87 S Ct 408, 417, 17 L Ed 2d 374, 386):

"There is no constitutional right to be arrested. The police are not required to guess at their peril the precise moment at which they have probable cause to arrest a suspect. * * * Law enforcement officers are under no constitutional duty to call a halt to a criminal investigation the moment they have the minimum evidence to establish probable cause, a quantum of evidence which may fall far short of the amount necessary to support a criminal conviction."

Assuming, without deciding, that the trial court properly dismissed the charge of illegal sale on the grounds of entrapment, we hold that it was not error to admit the two marijuana cigarettes into evidence. Defendant does not contend that the possession of the drug was unlawfully induced, but argues that the evidence should be suppressed as the fruit of illegal police activity.

There can be no entrapment when the criminal activity pre-exists the unlawful inducement. *United States* v. *Stephan* (ED Mich, 1943), 50 F Supp 445;

*People* v. *Smith* (1941), 296 Mich 176.   We adopt
the persuasive reasoning of *State* v. *Hochman*
(1957), 2 Wis 2d 410, 419, 420 (86 NW2d 446, 451,
452), where the Supreme Court of Wisconsin noted:

"The defense of entrapment is to be determined
upon the trial,—it pertains to the merits of the
cause—it is not to be raised in a preliminary or
collateral manner—it affects the substance of the
charge and is not a ground for excluding evidence.
Evidence illegally obtained will be suppressed or
excluded in a criminal case only upon a showing
that it was obtained in violation of a constitutional
right.   *  *  *

"With respect to the defense of entrapment, the
court is not called upon to deal with constitutional
considerations as it is in the case of the validity of
a search warrant or of a search made without a
warrant.   A challenge to an unlawful search is a
collateral matter.   The defense of entrapment is not
in such category."[1]

We do not agree that the 9-1/2 to 10-year sen-
tence imposed by the trial court is cruel or unusual
within the meaning of the Eighth Amendment to the
Federal Constitution or art 1, § 16 of the Michigan
Constitution.   The statute under which defendant
was convicted provides a maximum penalty of ten
years for the first offense.   The sentence imposed
was within the statutory maximum.   Such sentences
are not regarded as cruel or unusual punishments.
*People* v. *Collins* (1969), 16 Mich App 667; *People*
v. *Girard* (1969), 18 Mich App 593.   Sentences with-
in the statutory maximum for violation of the anti-
marijuana statutes do not differ from those imposed
for conviction of crime generally and are not viola-
tive of the constitutional prohibition against cruel
and unusual punishments.   *People* v. *Nelson White*

---

[1] See, also, *United States, ex rel. Hall,* v. *Illinois* (CA7, 1964),
329 F2d 354.

(1970), 26 Mich App 35; *People* v. *Albert White,
supra.* The current uncertain state of scientific
knowledge of marijuana does not justify striking
down anti-marijuana laws on cruel and unusual pun-
ishment grounds. *United States* v. *Ward* (CA7,
1967), 387 F2d 843, 848. Appellate courts do not
have supervisory control over sentences which are
within the statutory maximum. *People* v. *Doran*
(1967), 6 Mich App 86; *People* v. *Pate* (1965), 2
Mich App 66.

Defendant's contention that the prosecution failed
to carry its burden of proof of establishing that the
substance defendant gave the police agents was, in
fact, marijuana is without merit. A police chemist,
with experience in analyzing marijuana, testified
that the substance was *cannabis sativa.* That con-
clusion was substantiated by microscopic and chemi-
cal tests conducted on the drug. Defendant offered
no rebuttal testimony. The evidence fully war-
ranted the jury's verdict.

Defendant also assigns as error the trial court's
ruling that if the defendant took the stand to testify
in his own behalf, the prosecution could use two
prior marijuana convictions to impeach his credi-
bility and to show a common plan or scheme. See
MCLA § 768.27 (Stat Ann 1954 Rev § 28.1050).
While the prior convictions were too remote in time
to be used to show a common plan or scheme, we find
the trial court correctly ruled that these prior con-
victions would be available to the prosecution to im-
peach defendant's credibility if he testified. MCLA
§ 600.2158 (Stat Ann 1962 Rev § 27A.2158), pro-
vides:

"No person shall be excluded from giving evidence
on any matter, civil or criminal, by reason of crime
or for any interest of such person in the matter, suit,
or proceeding in question, or in the event of such

matter, suit or proceeding, in which such testimony may be offered, or by reason of marital or other relationship to any party thereto; but such interest, relationship, or conviction of crime, may be shown for the purpose of drawing in question the credibility of such witness, except as is hereinafter provided."

In *People* v. *Payne* (1970), 27 Mich App 133, 134, the following is found:

"In this state, whenever a defendant takes the stand in his own behalf, he may be cross-examined about prior convictions of any crime for purposes of testing his credibility. *People* v. *Diaolo* (1962), 366 Mich 394; *People* v. *Roney* (1967), 7 Mich App 678; *People* v. *Cybulski* (1968), 11 Mich App 244; *People* v. *Koontz* (1970), 24 Mich App 336."

Defendant chose not to testify as a matter of trial strategy. We find no error.

Defendant challenges the constitutional validity of obtaining the names of prospective jurors for duty in Detroit's Recorder's Court from a complete list of registered electors residing in that city. Defendant maintains that this system, authorized by MCLA § 725.115 (Stat Ann 1962 Rev § 27.3985), unnecessarily excludes 30% of the adult citizenry as jurors, particularly the poor and those who decline to participate in elections.

The right to an impartially-selected jury as secured by the Fourteenth Amendment to the Federal Constitution does not entitle one accused of a crime to a jury tailored to the circumstance of his particular case. *Hoyt* v. *Florida* (1961), 368 US 57 (82 S Ct 159, 7 L Ed 2d 118). The use of voter registration rolls to obtain candidates for jury duty presents the most exhaustive means available to secure as wide and as varied a random sample of the community as possible. The states are free to choose the

source of jury lists so long as the source reasonably reflects a cross-section of the population suitable in character and intelligence for that civic duty. *Brown v. Allen* (1953), 344 US 443, 474 (73 S Ct 397, 416; 97 L Ed 469, 498); *Carter v. Jury Commission of Greene County* (1970), 396 US 320, 332, 333 (90 S Ct 518, 525; 24 L Ed 2d 549, 559). Exclusive reliance on voter registration lists as the basis for selection of jurors is permissible unless it appears that there is systematic and intentional exclusion from those lists of a particular economic, social, racial or political group. *Gorin v. United States* (CA1, 1963), 313 F2d 641, 644. Defendant has failed to show any such exclusion.

Affirmed.

ENGEL, J., concurred.

BRONSON, J. (*concurring*). The facts of the instant case can be briefly stated. On July 25, 1969, the defendant, John Sinclair, was found guilty by jury verdict of having illegally possessed two marijuana cigarettes in violation of MCLA § 335.153 (Stat Ann 1957 Rev § 18.1123). On July 28, 1969, Sinclair was sentenced by the trial judge to serve a term of 9-1/2 to 10 years in prison—a minimum term 95% of the statutory maximum.

Testimony adduced at trial established that the alleged offense occurred on December 22, 1966, inside Sinclair's residence. Two undercover police agents to whom Sinclair is alleged to have given, free of charge, the two marijuana cigarettes, after their frequent requests, had disguised their appearances and infiltrated the Wayne State University and Artists' Workshop area. This infiltration began on October 18, 1966, and lasted through January 24, 1967. During this time period, the two police agents

ingratiated themselves with Sinclair and others at the workshop by doing typing, sweeping the floors, helping put together and collate publications, and bringing food to Sunday communal dinners.

In addition to being charged with illegal possession, Sinclair was also originally charged with making an illegal sale of marijuana. The sale count was dismissed by the trial judge after he found that the conduct of the undercover police officers constituted an illegal entrapment.

John Sinclair is the avowed leader of an acknowledged radical political party. Sinclair's lawyer argues that this Court would have to be naive if we were to believe that Sinclair was arrested and tried simply because he possessed two marijuana cigarettes. He argues that Sinclair's past activities, unpopular beliefs, long hair, habitual vulgar language, and bizarre life style are the real reasons which led to his incarceration.

If several of the issues presented in this case were matters of first impression, I would dissent from the opinion of the majority. However, since I am bound by the decisions of our state Supreme Court, I must concur.

I recognize that a sentence within the statutory limits is like a Brahmin—untouchable by appellate courts. *People* v. *Jones* (1968), 11 Mich App 703. I lack the power to alter this sentence and the period of incarceration.

I write separately to speak about the present state of the law which makes possession of marijuana, regardless of quantity, a felony punishable by incarceration for a maximum period of 10 years imprisonment.[1]

---

[1] The 10-year maximum sentence is applicable to the first offense only. A second offense is punishable by a maximum 20-year prison term, and subsequent convictions are subject to a 40-year maximum sentence. MCLA § 335.153 (Stat Ann 1957 Rev § 18.1123).

Medical authorities are not in agreement on the long-term effects, if any, of the use of marijuana on the human body. However, it is generally accepted that marijuana is not addictive as an opiate.[2] Whatever the effect may be, as may be shown by future medical studies, it is now clear that the adverse effects of marijuana are not as disruptive as is thought by those who share the view that has thus far prevailed in the legislature.

The estimate of the number of people who have tried marijuana at least once numbers in the millions and touches all ages and social groupings.[3] Such widespread disrespect for the law will quickly foster its own progeny. The present statute which extracts such severe punishment nurtures hostility between

[2] For those acutely interested in the problem of the proper medical classification of marijuana, attention is directed to the recent hearings in the case of the *People* v. *Eric Lorentzen*, Oakland County Circuit Court Number CR 70–6119, held July 13–17, 1970. See, Task Force Report: Narcotics and Drug Abuse, Ch 8, pp 211–231 (U. S. Government Printing Office, 1967). Also see, generally, John Kaplan, *Marijuana—The New Prohibition*, Chapter III (The World Publishing Co., 1970) (hereinafter cited as "Kaplan"); Richard J. Bonnie and Charles H. Whitebread, II, "The Forbidden Fruit and the Tree of Knowledge: An Inquiry into the Legal History of American Marijuana Prohibition", 56 Virginia L Rev 971 (1970) (hereinafter cited as "Bonnie and Whitebread"); Edward R. Bloomquist "Marijuana: Social Benefit or Social Detriment", 106 California Medicine 346–352 (May, 1967); H.B.M. Murphy, "The Cannabis Habit: A Review of Recent Psychiatric Literature", United Nations Bulletin on Narcotics, Vol. XV, 1963, pp 15–23; J. D. Reichard, "Some Myths About Marijuana", 10 Fed Probation, Oct–Dec 1946, pp 15–23; Walter Bromberg, "Marijuana: A Psychiatric Study", 113 Jour AMA 4 (1939).

[3] Kaplan, *supra*, fn 2, p 23; Statement of Stanley F. Yolles, Jr., before the Subcommittee to Investigate Juvenile Delinquency of the Committee in the Judiciary, U. S. Senate, on Control of Drug Abuse, September 17, 1969, p 3. A relatively recent study performed at Stanford University revealed that 69% of the student body had, at one time or another, used marijuana. Emily Garfield and Michael Boreing, "Marijuana Use on a Campus" (1969). Kaplan, *supra*, fn 6, p 23. "It is probably a conservative guess that one-third of the population of California between the ages of 16 and 29 has committed the serious crime of using marijuana and the figure seems to be rising yearly; and while in other areas the absolute number does not match that of California, the rate of increase is of similar magnitude." Kaplan, *supra*, fn 24, pp 25, 26.

the police agencies and the citizenry.   The problem is particularly acute with the youth of our state who are further alienated by what they perceive to be a hypocritical and arbitrary law.

If the "stepping stone" theory has been medically discredited, it is still legally viable inasmuch as one who transgresses the marijuana statute may go on to violate other and more serious laws.[4]   Law and order will prevail only so long as the public has respect for that concept and only so long as there is a rational relationship between the conduct forbidden and the alleged evil to be curbed.   The era of prohibition has apparently taught us nothing about the society in which we live.   As one writer cogently observed:

"In part because marijuana-users—unlike cheaters—do not rationalize their use of the drug as an aberrant event unrelated to their total personality, it becomes especially unhealthy for their society to declare them serious criminals.   It is obvious that when any society criminalizes such a large percentage of its young people, it raises very serious social problems.   We do not know whether those who violate such serious criminal laws will thereby become more likely to violate others.   It may or may not be true that the second crime comes easier—though it is perhaps no coincidence that the Prohibition era and the present are two of the most lawless periods of our history.   It is hard to see, however, how a realization that one has committed what is officially a very serious crime can fail to engender at least a somewhat more generalized lack of respect for both the law and the society that has so defined his action."[5]

---

[4] Herbert L. Packer, *The Limits of the Criminal Sanction* 340–341 (Stanford University Press, 1968).

[5] Kaplan, *supra*, p 33.

Today crime is society's omnipresent malignancy. Almost all classifications of criminal activity increase annually.[6]   Our police are seriously overworked; prosecutors are too few; court dockets too crowded.   Regardless of the highly commendable and vigorous action on the part of law enforcement officers, the battle is being lost.   To me, it is incomprehensible why marijuana penalties are not reduced in order to free police manpower for law enforcement activities which will better control and curtail crimes of violence.   Police officers should be utilized more effectively in stemming more acute criminal manifestations such as rapes, murders, robberies, muggings, extortions, thefts, and assaults.   During these times of rising crime and limited law enforcement personnel, we can no longer afford the luxury of predicating our priorities upon marijuana laws which injure no innocent party, do no damage to property, and apparently do not denigrate the users themselves.

A law, bottomed on questionable medical evidence, violated with impunity by a large and growing segment of our population, permits only enforcement so selective that but a handful of the violators become known, apprehended, charged, tried and convicted, and only an infinitesimal percentage incarcerated, let alone for a minimum term of nine and one-half years.

I do not understand the psychic pyrotechnics of John Sinclair's philosophy.   Like many parents, I am uncomfortable with the thought that he may be an influence on our children.   But one thing I do understand, as a citizen, a lawyer, and a judge, is

---

[6] See, *Crime in the United States*—Uniform Crime Reports—1969 (United States Government Printing Office).   However, intellectual honesty mandates that these statistics be viewed with jaundiced eye. See, *e.g.*, Sophia M. Robison, "A Critical View of the Uniform Crime Reports", 64 Mich L Rev 1031 (1966).

that it is bad business to imprison an individual so that his ideas cannot vigorously compete with those of others in the marketplace of men's minds. Can it be that Howard Mumford Jones was pungently correct when he observed: "Persecution is the first law of society because it is always easier to suppress criticism than to meet it".[7]

The courts of this state should not permit any citizen's rights to be abridged by highly selective enforcement of a law commonly violated in order to curb unrelated activities. Such selective enforcement encourages unsavory enforcement techniques such as were manifested in the instant case, and which resulted in the trial court's dimissal of the sale count against Sinclair. Such techniques are an affront to a system of government predicated upon the concept of equal justice.

I must, additionally, express my amazement that conduct engaged in by so many citizens still invokes such severe statutory criminal sanctions. A few years ago, in my position as Prosecuting Attorney for Oakland County, I appeared before a state legislative committee whose purpose was legislative reform. The topic under discussion was the escalation of drug abuse in our state. My views then, as now, were formulated upon my experience as a prosecutor and one who early recognized the myriad problems of growing drug abuse. At that time I urged that a more sound and realistic approach be taken to the problem. I renew that plea today.

I urge the legislative body to reconsider the present law which imposes such severe sanctions for activity which is indulged in by a growing percentage of our population. A new marijuana perspective is necessary. The time has come for responsible action

---

[7] Howard Mumford Jones, *Primer of Intellectual Freedom,* Introduction, p xiv (Harvard University Press, 1949).

to reform the present statute which has such a destructive effect upon our citizenry. I would hope that the legislature would re-evaluate the present law, the current medical data, and the objective which that body is attempting to attain. The guiding principle for reform should be one of making the punishment fit the crime. Coke said that "reason is the life of the law". If this is so, then to me reason mandates reform of our marijuana statutes.

The law is not an end in itself but a means to an end. The end is a just and peaceful society. The law should serve man in society.