John Carl **ENGLISH**

v.

Andrew P. **MILLER** et al.

Civ. A. No. 496–71–R.

United States District Court,
E. D. Virginia,
Richmond Division.

April 18, 1972.

Philip J. Hirschkop, Alexandria, Va., Richard E. Crouch, Washington, D. C., for plaintiff.

Robert Shepherd, Jr., Asst. Atty. Gen. of Va., Richmond, Va., for defendants.

## MEMORANDUM

MERHIGE, District Judge.

Petitioner complains of a judgment of the Circuit Court of Virginia Beach, Virginia, under date of May 12, 1970, wherein he was found guilty of violating Virginia Code § 54–509 and sentenced to a term of three years. While the complaint herein seeks both a declaratory judgment and habeas corpus relief, the Court concluding that English's conviction was premised on a statute in contravention of the Constitution of the United States, the matter is one more readily considered as a habeas corpus case.

■    Jurisdiction of the Court is acquired pursuant to Title 28 U.S.C. §§ 2241 and 2254. Two of the named respondents are the Attorney General of Virginia and the Director of Corrections of the State of Virginia, and since they are unnecessary parties in the habeas corpus action their motion to be dismissed will be granted. The appropriate respondent is A. E. Slayton, Jr., Superintendent of the Virginia State Penitentiary, who has custody of the petitioner pursuant to the complained of conviction and sentence imposed thereon.

The matter comes before the Court on petitioner's motion for summary judgment asserting that no genuine issue of fact remains in controversy. Respondent does not challenge that assertion, and accordingly the parties at the Court's request submitted memoranda of law addressing the legal issues.

■    The Court has considered the complaint, the answer of the defendant Slayton and exhibits filed therewith, as well as the admissions made by the respondent. It is admitted that petitioner has exhausted his State remedies. Accepting the State's factual contention as represented in their memorandum, the answer and exhibits filed therewith, a brief recitation of the events leading up to petitioner's conviction is demonstrative of the reasons leading to this Court's conclusion that Section 54–509 of the Code of Virginia, now repealed, was vague and overbroad and violative of the due process clause of the Fourteenth Amendment to the Constitution of the United States.

The Court finds that on June 7, 1968, petitioner's mother was the lessee of a home which was petitioner's usual place of abode located in the city of Virginia Beach, Virginia. On that date an officer of the Virginia Beach Police Department while observing the premises noted groups of teenagers enter the house by way of a garage door and remaining therein for periods of ten to fifteeen min-

utes. At approximately 8:12 p. m. the officer, Detective Vitale, a member of the Narcotics Squad, recognized one of the visitors whom he, Vitale, alleged was a known drug user, enter the premises by way of the garage door and remain inside for a period of three to four minutes. No search of the premises was conducted that evening and no one entering or exiting was either arrested or interrogated, nor were there any reports of sales or use of narcotic drugs at the home on that evening.

Some eight months later petitioner telephoned Detective Vitale and requested to meet with him in the English home. The invitation was declined, but Vitale accompanied by another officer, pursuant to an understanding with petitioner, met and the three rode in an unmarked police car discussing the drug problem in Virginia Beach. It appears that English readily admitted to the officers that he had previously used and experimented with drugs except heroin and had engaged in drug traffic, mainly outside the jurisdiction of Virginia Beach. He, English, emphatically denied using drugs of any nature at that time and requested that the officers stop using his name in connection with drug interviews. The interview terminated with a tour of the English garage and the room therein. The officers noted two clean surgical syringes but neither were confiscated, English's explanation being that he had purchased same for two out-of-towners who were "strung out on speed" and needed syringes. No reference was made as to the place in which the syringes were used.

Some five to six weeks thereafter, on March 22, 1969, Vitale on a tip that there was a party in the English garage apartment again maintained observation of the premises. When no apparent party materialized the observation was concluded. Six days later, however, pursuant to a search warrant, police officers entered the garage apartment in search of narcotic drugs and drug paraphernalia. English and several friends were there, however a search of the premises and the persons failed to yield drugs or paraphernalia.

Detective Vitale apparently continued to observe the home throughout the month of December 1969 and in January 1970 another search warrant was obtained and executed by presenting a copy of same to petitioner's mother, petitioner not being present at the time Vitale arrived. Mrs. English informed the detective that it was her home, and that her son had gone to Charlottesville. She, Mrs. English, accompanied the searchers into the room in the garage that evening where Detective Vitale collected items found in plastic bags which he thought to be marijuana and hashish found in a match box. Same were confiscated along with rolling paper, scales, pipes and $2,000.00 cash. Vitale later ascertained that the drugs and assorted paraphernalia belonged to a person other than petitioner, and that person was charged with the unlawful possession of said items.

Subsequent to the search of January 13th, the Commonwealth chose to bypass a preliminary hearing and presented the matter directly to the Grand Jury. A true bill was returned against English and he voluntarily surrendered. Vitale subsequently testified that English stated to him that upon returning to Virginia Beach from his trip to Charlottesville that he discovered several persons, including one Foyles who was charged with the unlawful possession of the confiscated items, in the garage apartment. According to the statement the persons were not there when he departed for Charlottesville, and he did not know either of their arrival or of the presence of drugs, other than one pipe bowl of hashish which he admittedly smoked with the others that evening.

On May 12, 1970, he was convicted of maintaining a common nuisance in violation of Section 54–509 of the Code of Virginia, and sentenced to the term of which he now complains. The section,

no longer in effect in Virginia, read as follows:

> Va. Code Section 54-509—Common Nuisances.—
>
> Any store, shop, warehouse, dwelling house, building, vehicle, boat, aircraft, or any place whatever, which is resorted to by narcotic drug addicts for the purpose of using narcotic drugs, or which is used for the illegal keeping or selling of the same, shall be deemed a common nuisance. No person shall keep or maintain such a common nuisance.

■ A statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law. This principle, which governs the constitutionality of alleged vague and overbroad statutes, was articulated by Mr. Justice Sutherland in an opinion of the United States Supreme Court in the case of Connally v. General Const. Co., 269 U.S. 385, at 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926). The principle there enunciated expressly states that a crime, and the elements constituting it, must be so clearly expressed that the ordinary person can intelligently choose, in advance, what course is lawful for him to pursue.[1] The peril of loss of liberty under our Constitution may not depend on speculation as to the meaning of a penal statute. A statute which denies notice of the prohibited conduct because it would be irrational to take such notice, is violative of due process of law. See Parker v. Morgan, 322 F.Supp. 585 (N.D.N.C.1971). The foregoing principles, it appears to this Court, have been breached by the Virginia Code section under consideration. There would appear to be a plethora of severe ambiguity contained therein. The phrase "any place whatsoever," under close judicial scrutiny, falls far short of constitutional requirements. The term "resorted to" is vague and hence open to an unacceptably wide range of constructions. The term "narcotic drug addicts" creates further problems by reason that "narcotic drugs" as defined in Virginia Code § 54-487(14) "means coca leaves and opium, cannabis and isonipecaine, and every substance not chemically distinguishable from them." Thus marijuana (cannabis) is classified as addictive, although this is contradictory to the vast weight of medical authority on the subject which holds that it is not addictive[2] and common knowledge of this fact is well established.[3]

It should be borne in mind that the issue before the Court is the constitutionality of the statute under which petitioner is now confined as distinguished from the right of the State to pass laws against the sale and use of marijuana.

■ The classification of marijuana as a narcotic is, in this Court's opinion, violative of the equal protection clause

1. See Lanzetta v. New Jersey, 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888 (1939); Boyce Motor Lines v. United States, 342 U.S. 337, 340, 72 S.Ct. 329, 96 L.Ed. 367 (1952); Long Island Vietnam Moratorium Committee v. Cahn, 437 F.2d 344 (2d Cir. 1970); Weissman v. United States, 373 F.2d 799 (9th Cir. 1967).

2. People v. McCabe, 49 Ill.2d 338, 275 N.E. 2d 407 (Ill.Sup.Ct.1971); People v. Sinclair, 30 Mich.App. 473, 186 N.W.2d 767, at 773. See also, People v. Sinclair, Sup. Ct. of Mich., 194 N.W.2d 878, filed March 9, 1972; President's Commission on Law Enforcement and Administration of Justice, Task Force Report: Narcotics and Drug Abuse, Ch. 8, pp. 211–231; Bonnie & Whitebread, The Forbidden Fruit and The Tree of Knowledge: An Inquiry Into the Legal History of American Marijuana Prohibition, 56 Va.L.Rev. 971 (1970); J. Kaplan, Marijuana—The New Prohibition, at 157, 160 (1970); The Non-Medical Use of Drugs, Report of the Canadian Government Commission of Inquiry (Penguin ed. 1970).

3. A Report to the Congress (1971); Testimony of Stanly F. Yolles, M.D., Director of Nat'l Institute of Mental Health before Juvenile Delinquency Committee of Senate Judiciary, Sept. 17, 1969, at 25, summarized in 6 Crim.L.Reporter 2036. See also, L. Grinspoon, M.D., Marijuana Reconsidered (Bantam ed. 1971).

of the United States Constitution.[4] The statutory pronouncement that "every substance not chemically distinguishable" from "coca leaves and opium, cannabis and isonipecaine" is a "narcotic drug," as referred to in Virginia Code § 54–487(14), is so vague that, even if it could be pharmacologically substantiated, due process considerations compel its repudiation. The use in the statute of the word "keeping" and the phrase "keep or maintain" are of little guidance either to the average person both desiring and willing to comply with the statute, or for that matter enforcement officials themselves. The phraseology leaves open to conjecture the degree of control or authority and the duration thereof that one must have over a "place" to "keep or maintain" it. Finally, the statute fails to specify whether intent or scienter of the slightest degree on the part of an alleged violator need be shown to sustain a conviction. Thus, conceivably, one could be convicted without knowledge that the forbidden "narcotic drugs" were being used on premises that they "keep or maintain." Indeed an interpretation of the scope of the statute's literal proscription might well include absentee landlords of apartment buildings, persons who rent out rooms in their homes, hotel operators, and conceivably proprietors or operators of large commercial establishments which might be "resorted to" by "narcotic drug addicts," such as movie theater owners and bus terminal operators and owners. Conviction under the statute carries a minimum penalty of three years for the first offense,[5] rendering the absence of a scienter requirement a serious if not fatal defect.

 Respondent's contention that the alternative element of the statute, i. e. "or which is used for the illegal keeping or selling of the same," may have been that which was the basis of defendant's conviction as distinguished from a conviction of maintaining a common nuisance "which is resorted to by narcotic drug addicts . . .," falls of its own weight, for assuming that the alternative element be constitutionally sound, a judgment wherein it is undeterminable whether one has been convicted on a valid or invalid ground must fail. Even if a statute be severable, a verdict cannot stand if any portion of said statute be invalid under the Federal Constitution. See Bachellar v. Maryland, 397 U.S. 564, 570, 90 S.Ct. 1312, 25 L.Ed.2d 570 (1970).

In view of the fact that the record discloses that petitioner has already served all but two days lacking one year of his sentence and has been eligible for parole since October of 1971, the Court will direct his release within a period of five days from this date, for the failure to do so might, should respondent appeal this Court's order, preclude petitioner from enjoyment of the practical advantages of this Court's decree.

An appropriate order will enter.

4. The Court's power to determine the actual state of facts concerning marijuana, as well as the Court's reliance on current writing of authorities in a rapidly developing field, is based upon pronouncements of the U.S. Sup. Ct. in Brown v. Bd. of Education, 347 U.S. 483, 494, f.n. 11, 74 S. Ct. 686, 98 L.Ed. 873 (1954), for unquestionably the Court has the power to determine the true state of facts upon which a law is based. See also, People v. Sinclair, *supra* (1972).

5. Va. Code Section 54–516.