**John Carl ENGLISH, Appellee,**

v.

**VIRGINIA PROBATION & PAROLE BOARD, Appellant.**

**No. 72-1710.**

United States Court of Appeals, Fourth Circuit.

Argued Feb. 6, 1973.

Decided June 19, 1973.

Robert E. Shepherd, Jr., Asst. Atty. Gen. of Virginia (Andrew P. Miller, Atty. Gen. of Virginia, on brief), for appellant.

Richard E. Crouch, Arlington, Va. (Philip J. Hirschkop, Alexandria, Va., T. David Thelen, Staff Counsel, American Civil Liberties Union of Virginia Foundation, Richmond, Va., and Prof. Harvey E. Bines, Charlottesville, Va., on brief), for appellee.

Before BUTZNER and FIELD, Circuit Judges, and MURRAY, District Judge.

FIELD, Circuit Judge:

On May 12, 1970, John Carl English was convicted in the Circuit Court of Virginia Beach, Virginia, upon an indictment which charged that on or about January 13, 1970, he did "unlawfully, wilfully and feloniously maintain or keep a common nuisance, to-wit; a dwelling house or building resorted to by narcotic drug addicts, for the purpose of using narcotic drugs and/or which is used for the illegal keeping or selling of the same" in violation of Section 54–509 of the Code of Virginia (1950), as amended.[1] The Supreme Court of Appeals of Virginia refused to grant a writ of error and certiorari was denied by the United States Supreme Court by order of June 7, 1971.

■ Thereafter, English filed a complaint in the district court in which he challenged the constitutionality of the Virginia statute under which he had been convicted and asked that the court enter a judgment declaring Section 54–509 unconstitutional and, additionally, prayed for habeas corpus relief. Treating the case solely as one for habeas corpus relief, the district court, 341 F. Supp. 714, concluded that Section 54–509 was violative of the due process clause of the Fourteenth Amendment, granted petitioner's motion for summary judgment and ordered that he be released

from custody.[2] Incident to his disposition of the case the district judge also held that the classification of marijuana as a narcotic drug in the definitional statute, Virginia Code Section 54–487 (14), contravened the equal protection clause of the Fourteenth Amendment. We disagree with the district court's conclusions in both respects and reverse.

Section 54–509 became a part of the statutory law of Virginia in 1934 when the Virginia General Assembly enacted the Uniform Narcotic Drug Act. It was taken verbatim from Section 13 of the Uniform Act and read as follows:

"Common Nuisances.—Any store, shop, warehouse, dwelling house, building, vehicle, boat, aircraft, or any place whatever, which is resorted to by narcotic drug addicts for the purpose of using narcotic drugs or which is used for the illegal keeping or selling of the same, shall be deemed a common nuisance. No person shall keep or maintain such a common nuisance."

The Uniform Act which was proposed by the Commissioners on Uniform Laws was adopted with some local modifications in every state except California and Pennsylvania, and also was enacted in the District of Columbia, Puerto Rico and the Virgin Islands. Although the Uniform Act was in almost nationwide effect for three decades there appear to have been only two reported cases dealing with Section 13, the common nuisance section. Both of these cases were in the District of Columbia and both upheld convictions under the statutory section in question. United States v. Williams, 93 U.S.App.D.C. 120, 210 F.2d 687 (1953), Gantt v. United States, 267 A.2d 350 (D.C.Ct. of App.1970). It is of some significance that in neither of

---

1. The Uniform Narcotics Drug Act, including Section 54–509, was repealed in 1970 when the General Assembly of Virginia enacted the Drug Control Act.

2. The complaint designated the Attorney General, the Director of Corrections, and the Superintendent of the Virginia State Penitentiary as parties defendant. However, English had already been released on parole when the opinion of the district court was filed, and an order was entered substituting the members of the Virginia Probation and Parole Board as respondents.

these cases was there any constitutional challenge to the statute.

In holding the statute to be unconstitutionally vague, the district judge referred to Connally v. General Const. Co., 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926), for the proposition that a crime, and the elements constituting it, must be so clearly expressed in a statute that the ordinary person can intelligently choose in advance the course which it is lawful for him to pursue. He then focused upon the words and phrases "any place whatever", "resorted to", "keeping" and "keeping or maintaining", and concluded that they are open to such a wide and ambiguous range of construction that the statute was constitutionally unacceptable. In this critical scrutiny and analysis of the statutory phraseology, the district court ignored the fact that such language has acquired a well-defined meaning through the years with respect to common nuisances under both the common law and statutory enactments. The classic language which appears in the statute was long ago analyzed and defined in State v. Main, 31 Conn. 572 (1863) with respect to a party who "did unlawfully keep and maintain * * * a house of bawdry and ill-fame," and in Commonwealth v. Kimball, 104 Mass. 465 (1870), involving a charge of "keeping and maintaining a tenement in Lynn as a liquor nuisance." In Commonwealth v. Patterson, 138 Mass. 498 (1884), Mr. Justice Holmes, then a Justice of the Supreme Judicial Court of Massachusetts, recognized that such phraselogy had acquired a well-defined meaning, stating:

> "A building cannot be said to be 'used' for the illegal sale of intoxicating liquors, within the meaning of the Pub.Sts. c. 101, § 6, which makes it a nuisance, nor can the proprietor be said to 'keep or maintain such common nuisance' within § 7, on the strength of a single casual sale, made

without premeditation, in the course of a lawful business. Not only do the words 'used' and 'keep and maintain' import a certain degree of permanence, but the same idea is usually a part of the conception of a nuisance."

While, of course, the statutes considered in these somewhat venerable cases were directed at activities less sophisticated than the twentieth century use of narcotics, this change in the subject matter does not render the operative phraseology either vague or ambiguous.[3] The Court in Connally, supra, stated:

> "[I]t will be enough for present purposes to say generally that the decisions of the court upholding statutes as sufficiently certain rested upon the conclusion that they employed words or phrases having * * * a well-settled common law meaning, notwithstanding an element of degree in the definition as to which estimates might differ." 269 U.S. at 391, 46 S.Ct. at 127.

In our opinion the language of the statute under consideration which was seized upon by the district court as unconstitutionally vague has a well-settled meaning in the law and passes muster under the Fourteenth Amendment.

■ The district court also noted that the statute failed to specify whether intent or scienter was necessary to sustain a conviction thereunder, and observed that conceivably a party could be convicted without knowledge on his part that narcotics were being used on his premises. The answer to this criticism is that the Virginia trial courts have construed the statute to require scienter and that the indictment in the present case charged that English "did unlawfully, *wilfully* and feloniously maintain or keep a common nuisance" (emphasis added). Additionally, it would appear that scienter has long been recognized as an integral element of a criminal offense under the law of common nuisances.

3. It is interesting to note that similar language was used in the common nuisance section of the Volstead Act. National Prohibition Act, October 28, 1919, c. 85, Title II, Section 21; 41 Stat. 314. *See* United States v. Dowling, 278 F. 630 (S.D.Fla.1922).

*See* State v. Main and Commonwealth v. Kimball, *supra.*

■ As heretofore stated, the district court also held that the legislative classification of marijuana as a narcotic drug in Section 54-487(14) was violative of the Equal Protection Clause.[4] In so holding, the court stated that the statute classified marijuana as addictive[5] "although this is contradictory to the vast weight of medical authority on the subject which holds that it is not addictive and common knowledge of this fact is well established." No evidence was presented on this subject[6] but the district judge concluded that he had the authority to rely upon the "current writing of authorities" in this field. A number of the articles and reports relied upon by the district court are listed in the footnotes of his opinion.[7] Nevertheless, controversy does exist with respect to marijuana, and reliance on the writings cited by the district court was not an appropriate basis for decision.

■ It is axiomatic that a legislature is free to adopt any classification it deems appropriate to promote the general welfare so long as the classification bears a reasonable relation to a proper legislative purpose. The breadth of legislative discretion and authority and the deference to be accorded to the rationality of legislative classification was recognized in McGowan v. Maryland, 366 U.S. 420, 425, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961). Speaking for the Court in that case, Chief Justice Warren stated:

"The standards under which this proposition is to be evaluated have been set forth many times by this Court. Although no precise formula has been developed, the Court has held that the Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others."

This language in *McGowan* recognized the oft stated principle that "[a] statutory discrimination will not be set aside as the denial of equal protection of the laws if any state of facts reasonably may be conceived to justify it." Metropolitan Co. v. Brownell, 294 U.S. 580, 584, 55 S.Ct. 538, 540, 79 L.Ed. 1070 (1935). We think it to be beyond question that the objectives of the Uniform Narcotic Drug Act fall well within the framework of the standard enunciated in Jacobson v. Massachusetts, 197 U.S. 11, 31, 25 S.Ct. 358, 363, 49 L.Ed. 643 (1905):

"If there is any such power in the judiciary to review legislative action in respect of a matter affecting the general welfare, it can only be when that which the legislature has done comes within the rule that if a statute purporting to have been enacted to protect the public health, the public morals or the public safety, has no real or substantial relation to those objects, or is, beyond all question, a plain, palpable invasion of rights secured by the fundamental law, it is the duty of the courts to so adjudge, and thereby give effect to the Constitution."

Finally, we note that the courts which have had occasion to deal with the question have almost uniformly upheld the constitutionality of the classification of marijuana as a "narcotic drug." People v. McKenzie, 169 Colo. 521, 458 P.2d 232 (1969); Commonwealth v. Leis, 355 Mass. 189, 243 N.E.2d 898 (1969); People v. Stark, 157 Colo. 59, 400 P.2d 923 (1965); People v. Glaser, 238 Cal.App. 2d 819, 48 Cal.Rptr. 427 (Dist.Ct.App. 1965), cert. denied 385 U.S. 880, 87 S.Ct. 164, 17 L.Ed.2d 107 (1966); Gonzales v.

---

4. This section which also adopted the language of the Uniform Act read as follows: " 'Narcotic drugs' mean coca leaves and opium, cannabis and isonipecaine and every substance not chemically distinguishable from them."

5. The statute does not, in fact, classify marijuana as addictive; it merely includes it in the classification of "narcotic drugs."

6. Summary disposition of the case by the district court was based only upon the complaint, the answer and exhibits filed therewith.

7. *See* English v. Miller, 341 F.Supp. 714, 717, nn. 2 & 3 (E.D.Va.1972).

**192**

State, 168 Tex.Crim. 49, 323 S.W.2d 55 (1959); State v. Navaro, 83 Utah 6, 26 P.2d 955 (1933). The foregoing cases are among those collated in one of the articles cited in the opinion of the district court, Bonnie & Whitehead, The Forbidden Fruit and The Tree of Knowledge: An Inquiry Into the Legal History of American Marijuana Prohibition, 56 Va.L.Rev. 971 (1970). In this exhaustive and somewhat critical review of the marijuana problem, the authors state: "We conclude that there is not yet sufficient uniformity of medical opinion to overcome any presumption of rationality attaching to marijuana legislation. Those courts directly confronting the issue have responded correctly, regardless of the precise constitutional framework within which they have worked." (p. 1133) Assuredly, the legislative classification here in question was not so arbitrary and unreasonable as to deny English the equal protection of the law.

Concluding as we do that the district judge erred in holding the Virginia statute unconstitutional, the order granting habeas corpus relief to English is reversed.

Reversed.