STATE of Missouri, Respondent,

v.

**Jerry MITCHELL, Appellant.**

**No. 59668.**

Supreme Court of Missouri,
En Banc.

March 13, 1978.

As Amended March 14, 1978.

Dissenting Opinions March 24, 1978.

Rehearing Denied April 10, 1978.

Howard L. Eisberg, Kansas City, Steven G. Gladstone, Columbia, and R. Keith Stroup, Washington, D. C., for appellant.

John D. Ashcroft, Atty. Gen., Preston Dean, William F. Arnet, Asst. Attys. Gen., Jefferson City, for respondent.

BARDGETT, Judge.

Appellant Jerry Mitchell appeals from the conviction and sentence of seven years entered on his plea of guilty to a charge of selling marihuana in violation of secs. 195.-017 and 195.200, RSMo Supp.1975. The two points made on this appeal are: 1) The classification of marihuana in schedule I of sec. 195.017 and the consequent punishment of marihuana offenses are set forth in sec. 195.200 deny appellant equal protection of the law in violation of the United States Constitution, Amendment 14, on the grounds that the classification of marihuana is arbitrary, erroneous, and irrational, and 2) the punishments provided for offenses involving the sale of marihuana under sec. 195.200 have no rational relationship to the gravity of the offense and are, therefore, facially unconstitutional as cruel and unusual punishment as applied to appellant. This court has jurisdiction under art. V, sec. 3, Mo.Const., as amended.

Appellant was charged with the sale of marihuana. It appears that the offense consisted of the sale of approximately 11 grams of marihuana for $5.00 in August of 1975. Very shortly after being charged, counsel was appointed for him. Appellant subsequently retained counsel and has had the benefit of an attorney throughout the proceedings.

On April 13, 1976, appellant with counsel appeared in the circuit court of Howell county and pled guilty to the charge. The circuit judge questioned appellant extensively about his understanding of the charge, the range of punishment being from five years to life in the penitentiary, and various other matters pertaining to the proceedings, including a clear understanding on appellant's part as well as the court's that the only arrangements that had been made between defense counsel and the prosecutor with reference to the plea of guilty were that (a) the prosecutor would recommend there be a presentence investigation, and (b) the state would make no other recommendations in the case, and (c) the court would dismiss a certain case No. 3407. The substance of the charge in case No. 3407 was not further described at the time of the plea of guilty, but at a subsequent hearing the record reflects the dismissed charge was one of selling a larger quantity of marihuana which the defendant admitted along with admitting other sales of marihuana in that same area. At the time appellant entered his plea, and on advice of counsel, appellant declined to reveal to the court any of the facts pertaining to the charge to which he was pleading guilty on the premise that he desired to enter a plea of guilty under the precepts of *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). The court made it clear to appellant that the court, after considering the presentence investigation, but not being bound by it, may sentence the appellant to a long term, to a short term, or may put him on probation. Appellant was also given the opportunity of withdrawing his plea of guilty on the day it was entered, which appellant declined. The plea of guilty was accepted and the matter was reset for June 8, 1976, the intervening time being necessary for the preparation of a pre-sentence investigation.

On June 8 the parties and attorneys again appeared in court and appellant was asked if he persisted in his plea of guilty entered on April 13, to which he replied

"Yes, sir." The court stated its thoughts concerning the type of offense involved in the sale of marihuana, its seriousness, and its effect upon younger people and the community. The court then sentenced defendant to twelve years in the penitentiary and denied probation.

On June 14, 1976, appellant filed a motion to withdraw his plea of guilty and set aside the sentence in circuit court. A hearing on this motion took place on July 9, 1976.[1] By this time the case had attracted some national attention and attorneys from other parts of the country representing organizations interested in the reform of marihuana laws entered their appearance as co-counsel for appellant. At the outset of this hearing, one of the attorneys for appellant advised the court that he had discussed the matter with the other counsel and with appellant and it was appellant's desire to withdraw the motion to set aside the guilty plea and that appellant desired to make a further statement to the court. The appellant then told the court that he was guilty of two charges of sale and that he had sold marihuana on other occasions. One of the sales involved a much larger quantity of marihuana to some undercover agent. The record reflects that appellant admitted to having been in the circuit court of Howell county before on previous charges of possession of a controlled substance and had been placed on probation. Further colloquy took place between the court and appellant concerning marihuana during which each expressed his view as to its effect upon users. The court indicated that he believed there had been a change in the attitude on the part of the appellant since the date of sentencing a short time before and the court was, therefore, going to set aside the twelve-year sentence and impose a seven-year sentence, which the court did. The

record reflects in general a satisfaction on the part of the defense side of the case with the manner in which the circuit court handled the sentencing; however, at the same time, a very respectful but strong viewpoint was stated to the effect that the classification of marihuana and the statutory punishments therefor were unconstitutional. The trial court disagreed but encouraged the defense to seek an appellate adjudication in this case on the question of the constitutionality of the Missouri statutes relating to marihuana.

This appeal is limited to consideration of the facial constitutionality of the statutes relating to the sale of marihuana. It is obvious from the statement of facts that there is no question but what the appellant violated the terms of the statute by making a sale of marihuana. That is admitted.

On this appeal the appellant challenges the constitutionality of sec. 195.017, RSMo Supp.1975 (classification of marihuana as a schedule I substance) and sec. 195.200, subsec. 1(4), RSMo Supp.1975 (penalty provision for sale of schedule I substances, which includes marihuana).

The initial issue is whether the appellant preserved the issues he now seeks to raise on appeal in light of the fact he pled guilty to the offense. We think this question is answered by *Kansas City v. Hammer,* 347 S.W.2d 865, at 868 (Mo.1961), wherein the court stated:

"This state is thoroughly committed to the proposition that the unconstitutionality of an ordinance or statute on which a prosecution is based cannot be waived. The invalidity of such an act on constitutional grounds goes to the subject matter of the prosecution and may be raised at any stage of the proceedings, even by a collateral attack after conviction. *Ex*

---

1. At the July 9 hearing the court requested defense counsel to proceed with whatever they had to say in support of the motion to withdraw the plea of guilty. Defense counsel then withdrew the motion to withdraw the plea of guilty stating that it had been filed without the benefit of a transcript of the plea proceedings and sentencing proceedings in order to preserve certain rights of Mr. Mitchell on appeal.

Counsel then said that he had subsequently reviewed the transcript and discussed the matter with other counsel and with Mr. Mitchell and that it was appellant's desire to withdraw the motion to set aside the guilty plea. It is clear from the record that a number of the factual allegations critical of the trial court's proceedings and the acceptance of the guilty plea were totally and facially incorrect.

parte *Lerner,* 281 Mo. 18, 218 S.W. 331; Ex parte *Taft,* 284 Mo. 531, 225 S.W. 457; Ex parte *Smith,* 135 Mo. 223, 229, 36 S.W. 628, 33 L.R.A. 606; *Williams v. Kaiser,* 323 U.S. 471, 65 S.Ct. 363, 89 L.Ed. 398; and *State v. Finley,* 187 Mo.App. 72, 172 S.W. 1162."

 *Kansas City v. Hammer, supra,* did not involve a guilty plea but it is well settled in this state that jurisdictional defects and defenses are not waived by entering a guilty plea. *State v. Cody,* 525 S.W.2d 333 (Mo. banc 1975); *Kansas City v. Stricklin,* 428 S.W.2d 721 (Mo. banc 1968). It is apparent therefore that appellant did not waive his objections to the facial constitutionality of the statute under which he was convicted since, if it were found facially unconstitutional, the appellant could not have been legally convicted and incarcerated for its violation.

 Appellant does not contend that the sale of marihuana is a fundamental right. Accordingly, to determine whether the scheme of statutory classification set forth in sec. 195.017 violates the strictures of the equal protection clause, the appropriate standard to be applied is the "rational basis test". The rules pursuant to which the appellant's case must be tested were set forth in *Lindsley v. Natural Carbonic Gas Co.,* 220 U.S. 61, 78–79, 31 S.Ct. 337, 340, 55 L.Ed. 69 (1911):

"1. The equal protection clause of the Fourteenth Amendment does not take from the State the power to classify in the adoption of police laws, but admits of the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis and therefore is purely arbitrary. 2. A classification having some reasonable basis does not offend against that clause merely because it is not made with mathematical nicety or because in practice it results in some inequality. 3. When the classification in such a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed. 4. One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary."

In other words, it must be determined whether the legislature in classifying marihuana in schedule I had a rational reason for doing so or whether the classification is arbitrary. If arbitrary, the statute must be held unconstitutional.

 The court is guided in its determination by the standards for classifying schedule I substances set forth in sec. 195.017 as well as by the relationship of marihuana to the other substances listed in schedule I. If there is presently no reasonable basis for the legislature concluding that marihuana "(1) has high potential for abuse; and (2) has no accepted medical use in treatment in the United States or lacks accepted safety for use in treatment under medical supervision", as those standards relate to other schedule I substances, sec. 195.017 would be unconstitutional as it relates to marihuana.

 In making this determination, the court is not bound to use only that information available to the legislature when it enacted the statute, but we are also guided by information presently available. *Leary v. United States,* 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969). *Leary* involved a situation in which the court was judging the constitutionality of a statutory presumption. The court did not limit itself to information available at the time when the presumption was enacted, but it also considered more recent information to determine what effect, if any, the new information had on the validity of the presumption.

In pertinent part, sec. 195.017, RSMo Supp.1975, provides:

"1. The division of health shall place a substance in Schedule I if it finds that the substance:

(1) has high potential for abuse; and

(2) has no accepted medical use in treatment in the United States or lacks accepted safety for use in treatment under medical supervision.

2. Schedule I: (1) The controlled substances listed in this subsection are included in Schedule I.

(2) Any of the following opiates, including their isomers, esters, ethers, salts, and salts of isomers, esters, and ethers, unless specifically excepted, whenever the existence of these isomers, esters, ethers and salts is possible within the specific chemical designation:

. . . . .

(3) Any of the following opium derivatives, their salts, isomers and salts of isomers, unless specifically excepted, whenever the existence of these salts, isomers and salts of isomers is possible within the specific chemical designation:

. . . . .

(j) Heroin;

. . . . .

(4) Any material, compound, mixture or preparation which contains any quantity of the following hallucinogenic substances, their salts, isomers and salts of isomers, unless specifically excepted, whenever the existence of these salts, isomers, and salts of isomers is possible within the specific chemical designation:

. . . . .

(i) Lysergic acid diethylamide;
(j) Marihuana;

. . . . .

The punishment for sale of marihuana is provided for in sec. 195.200, subsec. 1(4): "Except as provided in paragraph (c) of subdivision (1) of subsection 1 of this section, for the offense of selling, giving or delivering any controlled substance listed in Schedule I or II, to a person, by imprisonment in a state correctional institution for a term of not less than five years nor more than life imprisonment."

Although no evidence was submitted by the appellant to the trial court, we have reviewed the documents he has submitted to the court.[2] After studying these materials and the briefs of the parties, we have determined that marihuana is not improperly classified in Schedule I.

◼ In Missouri the legislature does not provide a comprehensive legislative history; therefore, the court is relegated to looking elsewhere for such information. Since Missouri's Narcotic Drug Act, specifically sec. 195.017, is patterned after 21 U.S.C. sec. 812 of the federal Comprehensive Drug Abuse Prevention and Control Act of 1970, it is appropriate to consider the legislative history provided by the United States Congress to aid us in our understanding of sec. 195.-017. 1970 U.S.Code Cong. and Admin.News p. 4566.

The appellant directs the court's attention to two cases from other jurisdictions, *People v. McCabe,* 49 Ill.2d 338, 275 N.E.2d 407 (1971), and *People v. Sinclair,* 387 Mich. 91, 194 N.W.2d 878 (1972), in which the classification of marihuana was found to be unconstitutional. Both of these cases, however, are different from the instant case. *McCabe* involved a statute which classified marihuana as a narcotic drug. There was another statute in Illinois at the time, the Drug Abuse Control Act, which included hallucinogens and barbiturates. The penalties under the Drug Abuse Control Act were significantly less than those for substances in the Narcotic Drug Act. The Narcotic Drug Act provided for a ten-year-mandatory-minimum sentence for the sale of marihuana, whereas, the Drug Abuse Control Act provided a one-year-maximum jail term for the sale of substances contained in it. After considering the relevant scientific, medical and social data about the various substances in both acts, the court found that marihuana was improperly classified in the Narcotic Drug Act because it had characteristics "much more in common with the barbiturates, amphetamines and,

**2.** National Commission on Marihuana and Drug Abuse, Marihuana: A Signal of Misunderstanding (March 1972), and Drug Use in America: Problems in Perspective (March 1973); Marijuana Decriminalization: Hearing on S. 1450 before the Subcommittee to Investigate Juvenile Delinquency of the Committee on the Judiciary, United States Senate, 94th Cong., 1st Sess. (May 14, 1975).

particularly, the hallucinogens than it does with the 'hard drugs' . . . ." 275 N.E.2d at 412. The court went on to say at 412 that "one cannot reasonably distinguish marijuana from the substances under the Drug Abuse Control Act." It was on this basis that the court held marihuana was misclassified and violated the equal protection clause. The *McCabe* view was rejected by division one of this court in *State v. Burrow,* 514 S.W.2d 585 (Mo.1974).

*People v. Sinclair, supra,* involved a similar statutory scheme. Michigan classified marihuana with narcotic drugs like opium, morphine, and heroin. M.C.L.A. sec. 335.-151. Hallucinogens were classified in M.C.L.A. sec. 335.106 and were punished less severely than offenses involving marihuana. The court, however, described marihuana as a mild hallucinogen and concluded on this basis that there was no rational basis to penalize an offense involving marihuana more severely than offenses involving other hallucinogens. 194 N.W.2d at 884. The decision in *Sinclair* was a plurality opinion which reversed the conviction and discharged the defendant. The plurality for that result consisted of two judges being of the opinion that statutory categorization of marihuana along with "hard drug" narcotics for purposes of imposition of penalties denied equal protection, one judge being of the opinion that the statute denied right to liberty and pursuit of happiness, two judges being of the opinion that the marihuana cigarettes which were introduced in evidence should have been excluded as evidence obtained as a result of illegal entrapment, and three judges being of the opinion that a minimum sentence of nine and one-half years constituted cruel and unusual punishment. As such, the opinion in *Sinclair* constitutes very little authority for any singular proposition.

Unlike the statutes found unconstitutional in Illinois and Michigan, Missouri classifies marihuana with other hallucinogens and not as a narcotic. Although hallucinogens, such as LSD (lysergic acid diethylamide), mescaline, peyote, and marihuana are schedule I substances, which schedule also includes heroin and opiates, they are separately classified under sec. 195.017, subsec. 2(4). Sec. 195.200, subsec. 1(4), does not penalize the sale of marihuana any more severely than the sale of other hallucinogenic substances, and the fact that the sale of marihuana is punished the same as the sale of narcotic substances does not deny appellant equal protection of the law. Thus, the Missouri statute is not subject to the same constitutional infirmities as the statutes considered in *McCabe* and *Sinclair.* Furthermore, a number of jurisdictions, including Connecticut, Alabama, South Dakota, Arizona, and the federal government, with a classification scheme similar to that employed in Missouri, have held the classification scheme provided in the Uniform Controlled Substances Act does not deny equal protection. See, for example, *State v. Rao,* 171 Conn. 600, 370 A.2d 1310 (1976).

Both *Marihuana: A Signal of Misunderstanding* at 177, and *Drug Use In America: Problem in Perspective* at 460–461, recommend that marihuana be classified according to the scheme set forth in the Uniform Controlled Substances Act, which is the scheme presently used in Missouri. It should be pointed out, however, that both reports also recommend penalties significantly less severe for marihuana offenses than those presently in force in Missouri.

 Appellant contends he is denied equal protection because marihuana is less harmful than alcohol and tobacco which are not proscribed. He makes the same argument with respect to barbiturates because their sale, although proscribed, is punished less severely than the sale of marihuana. This argument, however, is without merit. As to alcohol and tobacco, the legislature's decision to prohibit some harmful substances does not thereby constitutionally compel it to regulate or prohibit all harmful substances. *Williamson v. Lee Optical of Oklahoma, Inc.,* 348 U.S. 483, 489, 75 S.Ct. 461, 99 L.Ed. 563 (1955); *United States v. Kiffer,* 477 F.2d 349 (2d Cir. 1973). This same reasoning applies to the punishment assessed for the sale of barbiturates. Barbiturates are different from marihuana and

regardless of the fact they may be more harmful than marihuana this does not require the legislature to punish their sale more severely than marihuana or proscribe them at all.

Appellant also claims he was denied equal protection because the offense of delivery of marihuana for no remuneration is punished less severely than sale of marihuana. This, however, loses sight of the principle "that '[c]lassification of the subjects of legislation is not prohibited by the equal protection of the laws clauses of the United States and State constitutions "if all within the same class are included and treated alike," . . . ; [or] "if all persons in the same class are treated with equality," . . . .' " *State v. Ewing*, 518 S.W.2d 643, 646 (Mo.1975). The legislature could distinguish between transfers for remuneration and those without, the former carrying the implication of trafficking in drugs. Furthermore, the persons within each of these classes are treated equally and, therefore the fact that the offenses are punished differently does not violate the equal protection clause.

Appellant also argues that marihuana has been misclassified in schedule I because it does not come within the criteria established by the legislature for those substances, to wit, the substance: "(1) has high potential for abuse; and (2) has no accepted medical use in treatment in the United States or lacks accepted safety for use in treatment under medical supervision." Sec. 195.017, subsec. 1. It should be recalled at this point that there is a presumption in favor of a statute's constitutionality; the statutory classification should be upheld if it is premised on a rational basis; and the appellant has the burden of proving the statute is unconstitutional. *United States v. Carolene Products Co.*, 304 U.S. 144, 58 S.Ct. 778, 82 L.Ed. 1234 (1938). The appellant has failed to carry this burden of proof.

Although he has directed the court's attention to numerous studies which comment on the harmlessness of marihuana, there are, however, other authorities which take a contrary view regarding the hazards involved in using marihuana. The present state of knowledge of the effects of marihuana is still incomplete and is marked by much disagreement and controversy. In *United States v. Carolene Products, supra,* the court stated at 153–154, 58 S.Ct. at 784: "Where the existence of a rational basis for legislation whose constitutionality is attacked depends upon facts beyond the sphere of judicial notice, such facts may properly be made the subject of judicial inquiry . . . .. But by their very nature such inquiries, where the legislative judgment is drawn in question, must be restricted to the issue whether any state of facts either known or which could reasonably be assumed affords support for it." A body of knowledge does exist upon which the legislature could have rationally relied in deciding to classify marihuana in schedule I. In light of the fact that we are dealing with a debatable medical issue, we cannot conclude that the legislature acted arbitrarily or irrationally in placing marihuana in schedule I. See *United States v. Kiffer, supra,* and *State v. Rao, supra.*

The appellant next contends that the punishments provided for the sale of marihuana—five years to life imprisonment—have no rational relationship to the gravity of the offense and, as such, are cruel and unusual both on the face of the statute and as applied to appellant. Courts in this state have traditionally held that so long as the punishment meted out is within the statutory limits it does not violate the Eighth Amendment to the U. S. Constitution. This, though, is not an immutable fact; punishments prescribed by the legislature are subject to some judicial review. In *State v. Johnson*, 549 S.W.2d 348, 352 (Mo. App.1977), it was stated, "our courts have repeatedly held that a punishment which is within the statutory limits for the offense, . . . is not cruel and unusual because of its duration *unless so disproportionate to the offense committed so as to shock the moral sense of all reasonable men as to what is right and proper under the circumstances.*" (Emphasis supplied.)

■ With respect to the statutory range of punishment, or more particularly the statutory minimum sentence of five years, the court holds, on the record here, that such is not facially cruel and unusual punishment for the sale of marihuana and is, therefore, not unconstitutional. It is, of course, recognized that people do and will differ in their opinions concerning the use of marihuana and, consequently, also differ in whether its use, distribution, or sale should be proscribed and, if proscribed, what the penalties should be. This is, however, a matter for the legislative branch of government. The court should not invalidate a statutory minimum penalty unless the court can say with confidence that the minimum term of five years bears no rational relationship to the severity of the crime of selling marihuana. As noted supra, there are differing views among people, including judges and legislators, concerning marihuana. The record here does not persuade us that there is no rational relationship between the offense and the statutory minimum sentence.

■ Appellant also contends that the seven-year sentence he received is cruel and unusual punishment in the circumstances of this case. The "circumstances" referred to by appellant are that he is nineteen years old with no history of violent crime but had simply delivered a small amount of marihuana to an adult. Appellant points out that he could not be considered a wholesale racketeer or a major threat to society.

The facts set forth in the first portion of this opinion and which came to light at the July 8th hearing, and the changed attitude of the appellant concerning his conduct, were considered by the trial court as justification for both setting aside the twelve-year sentence and imposing the seven-year sentence. The court holds the seven-year sentence is not cruel and unusual punishment.

The judgment is affirmed.

MORGAN, C. J., FINCH, J., and SHANGLER, Special Judge, concur.

DONNELLY, J., concurs in result in separate opinion filed.

HENLEY, J., concurs in result and concurs in separate concurring opinion of DONNELLY, J.

SEILER, J., dissents in separate dissenting opinion filed.

RENDLEN, J., not sitting.

March 14, 1978: SHANGLER, Special Judge, withdraws concurrence and concurs in separate dissenting opinion of SEILER, J.

March 24, 1978: SEILER, J., withdraws dissenting opinion filed March 13, 1978, and files separate dissenting opinion this date in lieu thereof and also concurs in separate dissenting opinion of SHANGLER, Special Judge.

SHANGLER, Special Judge, files separate dissenting opinion and also concurs in separate dissenting opinion of SEILER, J., filed today.

DONNELLY, Judge, concurring in result.

It would appear that the principal opinion approves a rule that a " 'punishment which is within the statutory limits for the offense, * * * is not cruel and unusual because of its duration *unless so disproportionate to the offense committed so as to shock the moral sense of all reasonable men as to what is right and proper under the circumstances.'* "

The italicized portion of the above statement appears in *State v. Brownridge,* 353 S.W.2d 715, 718 (Mo.1963) and was cited with approval in *State v. Agee,* 474 S.W.2d 817, 821, 822 (Mo.1971). In *Brownridge,* Division No. 1 of this Court did not note the fact that in *State v. Wolfe,* 343 S.W.2d 10, 16 (Mo. banc 1961), this Court *en banc* had ruled that " ' * * * when the punishment assessed is within the range prescribed by statute, it cannot be adjudged to be excessive by an appellate court. * *.' "

In *State v. Rizor,* 353 Mo. 368, 182 S.W.2d 525, 529 (1944), the view was expressed that this Court has "often treated it as a cogni-

zable question on appeal if there was evidence of passion and prejudice" on the part of the jury in assessing punishment.

I concede, as indicated in *Rizor,* that an argument can be made for retreating from the rigidity of the *Wolfe* rule. I *doubt* that we should abrogate the *Wolfe* rule. I am *certain* we should not do so by indirection.

I concur only in the result.

SEILER, Judge, dissenting.

I join in the dissenting opinion of Shangler, Sp. J., and I respectfully dissent further as follows:

The offense here was the sale of less than half an ounce of marijuana—a trivial amount—for the trifling sum of $5.00. In my opinion the sentence of seven years incarceration in this case is so excessive as to constitute cruel and unusual punishment.

In *Coker v. Georgia,* 433 U.S. 584, 97 S.Ct. 2861, 2869, 53 L.Ed.2d 982 (1977), the United States Supreme Court declared that "the death . . . sentence . . . is a disproportionate punishment for rape" under the relevant standards of the Eighth Amendment's ban against cruel and unusual punishment. *Id.* at 599, 97 S.Ct. at 2869.

"[T]he Eighth Amendment bars not only those punishments that are 'barbaric' but also those that are 'excessive' in relation to the crime committed. Under *Gregg* [*v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976)], a punishment is 'excessive' and unconstitutional if it (1) makes no measurable contribution to acceptable goals of punishment and hence is nothing more than the purposeless and needless imposition of pain and suffering; or (2) is grossly

out of proportion to the severity of the crime. A punishment might fail the test on either ground." *Id.* at 592, 97 S.Ct. at 2865.

"[T]he attitude of state legislatures and sentencing juries do not wholly determine this controversy, for the Constitution contemplates that in the end our own judgment will be brought to bear on the question of the acceptability of the . . . penalty under the Eighth Amendment." *Id.* at 597, 97 S.Ct. at 2868.

"[T]hese Eighth Amendment judgments should not be, or appear to be, merely the subjective views of individual Justices; judgments should be informed by objective factors to the maximum possible extent," *id.* at 592, 97 S.Ct. at 2865, in part, because the Amendment "must draw its meaning from the evolving standards of decency that mark the progress of a maturing society," *Trop v. Dulles,* 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 630 (1958).

The penalty at issue—five years to life imprisonment for the first sale of any amount of marijuana—is that mandated by the legislature under § 195.200, RSMo Supp. 1975. It is the nexus of that sanction to the crime which has been committed which, in my judgment, must be the subject of our inquiry. We are compelled, therefore, to survey the "objective indicia" before us, *Gregg v. Georgia,* 428 U.S. 153, 173, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), in order to determine whether the nexus is a rational *ergo* legitimate one.

The majority responds to Mitchell's Eighth Amendment challenge by quoting our standard for review under the state constitutional ban against cruel and unusual punishment.[1] This standard is not

---

1. That standard is "[A] punishment which is within the statutory limits for the offense . . is not cruel and unusual because of its duration *unless so disproportionate to the offense committed so as to shock the moral sense of all reasonable men as to what is right and proper under the circumstances.*" (emphasis supplied) *State v. Johnson,* 549 S.W.2d 348, 352 (Mo.App.1977).

To make a constitutional right depend upon whether all reasonable men agree it has been violated is to corrupt the very idea of rights.

We have rights to shield us against what the majority views may be. We have never addressed this question in Missouri in relation to cruel and unusual punishment. We have always looked at it as though it were a question of whether the jury's verdict (or the judge's sentence) was reasonable or not. But this question is much different from the one of whether the punishment prescribed by the legislature is cruel and unusual in relation to the offense involved. No matter how reasonable or unreasonable the judge (or a jury) might

that adopted by the United States Supreme Court in applying the Eighth Amendment, e. g., *Coker v. Georgia,* 433 U.S. 584, 592, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977); *Gregg v. Georgia,* 428 U.S. 153, 171–73, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976); *Trop v. Dulles,* 356 U.S. 86, 100–01, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958); *Weems v. United States,* 217 U.S. 349, 366–73, 30 S.Ct. 544, 54 L.Ed. 793 (1910), which standard, enunciated above, it is our constitutional obligation to apply in this case.

The defendant challenged the rational basis under which the first sale of any amount of marijuana is punished as severely as would be the sale of other Schedule I drugs or compounds under § 195.017, RSMo Supp. 1975, e. g., heroin. The majority's response is, I respectfully contend, misguided and in error. First, the principal opinion seeks a legal shield behind which it can avoid the objective inquiry, which I believe to be necessary, by reliance upon *United States v. Carolene Products Co.,* 304 U.S. 144, 58 S.Ct. 778, 82 L.Ed. 1234 (1938). *Carolene Products* upheld the constitutionality of the Filled Milk Act of 1923 and in so doing discredited the judicial interference in the Congressional regulation of interstate commerce. There is a great difference between a judgment as to whether Congress can declare that a compound of condensed skim milk and coconut oil is "imitation milk" and a judgment as to whether the legislature can rationally unite marijuana and heroin in a single criminal prohibition. In fact, the decision by Justice Stone in *Carolene Products* is best remembered not for its text but for its oft-quoted footnote which says: "There may be narrower scope for operation of the presumption of constitutionality when legislation appears on its face to be within a specific prohibition of the Constitution, such as those of the first ten amendments, which are deemed equally specific when held to be embraced within the Fourteenth." *Id.* at 152 n. 4, 58 S.Ct. at 783. *Carolene Products* is thus clearly a distinguishable precedent and does not shield the

majority from the duty of making its own objective inquiry into the rational basis of the criminal penalty.

The second response of the majority is to refer without citation to "other authorities which take a contrary view regarding the hazards involved in using marihuana. The present state of knowledge of the effects of marihuana is still incomplete and is marked by much disagreement and controversy . . . [W]e are dealing," concludes the principal opinion, "with a debatable medical issue."

This contention is unresponsive for two reasons. The first is that however "incomplete" our knowledge may be or how "debatable" the "medical issue" concerning marijuana may be or how much "disagreement or controversy" may surround any discussion concerning the drug, this grants no legislative license to violate one's constitutional right to be free from cruel and unusual punishment. There is surely less "debate" and "controversy" concerning the assuredly harmful effects of cigarette smoking. Yet were the legislature to prohibit the sale of cigarettes as a crime, I question whether this court would be as deferential were the legislature to mandate a penalty of imprisonment from five years to life for the sale of less than half a pack.

The second reason the majority's view is unresponsive is that it has shielded itself behind alleged factual uncertainty which is the relic of an earlier day. No longer can we realistically claim, as once we could, that the data upon which to judge the effects of marijuana is either unreliable, crudely assembled, or considerably outdated. Substantial private research over the past several years has been joined by two comprehensive government supported efforts, well-financed studies utilizing advanced scientific analysis: our own government's Report of the National Commission on Marijuana and Drug Abuse and the Canadian Commission of Inquiry into the Non-Medical Use of

---

have been, the punishment in this case had to be at least five years imprisonment. To apply the traditional Missouri test relied upon by the

majority means a challenge such as the present one will always fail.

Drugs. These studies, summarized *infra*, demonstrably, effectively, categorically, and reliably show that there is no firm evidence that marijuana as presently used in this country is attended with danger to the user or to others. As the Supreme Court of Michigan said in *People v. Sinclair*, 387 Mich. 91, 104–15, 194 N.W.2d 878, 881–87 (1972), "Comparison of the effects of marijuana use on both the individual and society with the effects of other drug use demonstrates not only that there is no rational basis for classifying marijuana with the 'hard narcotics', but, also, that there is not even a rational basis for treating marijuana as a more dangerous drug than alcohol . . . We can no longer allow the residuals of that early misinformation to continue choking off a national evaluation of marijuana dangers. That a large and increasing number of Americans recognize the truth about marijuana's relative harmlessness can scarcely be doubted." *See Ravin v. State*, 537 P.2d 494, 508 (Alaska 1975); *People v. McCabe*, 49 Ill.2d 338, 275 N.E.2d 407, 409–10 (1971).

What, then, are the "objective indicia" which, according to *Gregg* and *Coker*, judges are to analyze in making a determination of whether a punishment is "cruel and unusual," and what do they show in this case?

I would look to four factors: (a) reliable factual data, (b) relevant informed public opinion, (c) the sanction imposed in other jurisdictions, and (d) the penalties in Missouri for other crimes. *See Downey v. Perini*, 518 F.2d 1288, 1290–92 (6th Cir.), *vacated and remanded on other grounds*, 423 U.S. 993, 96 S.Ct. 419, 46 L.Ed.2d 367 (1975); *In re Lynch*, 8 Cal.3d 410, 105 Cal.Rptr. 217, 229–35, 503 P.2d 921, 933–39 (1972); *People v. Lorentzen*, 387 Mich. 167, 194 N.W.2d 827, 829–33 (1972).

(a) The two massive government endowed studies, one each by the American and Canadian national governments, represent modern, comprehensive attempts to determine the effects of marijuana use. These and other studies have reported similar findings which are summarized as follows: use of marijuana does not lead to mental or physical deterioration; the drug is not addicting, producing neither tolerance when used nor withdrawal symptoms when use was discontinued; its use does not cause insanity or death; marijuana does not cause criminal or otherwise violent behavior, or lead to the use of other drugs such as "hard drugs" or narcotics; is not an aphrodesiac nor does it cause brain damage or genetic defects. It is not, in short, a major threat to public health or a danger to public safety. Soler, Of Cannabis and the Courts: A Critical Examination of Constitutional Challenges to Statutory Marijuana Prohibitions, 6 Conn.L.Rev. 601, 608–12 (1974); Hindes, Morality Enforcement through the Criminal Law and the Modern Doctrine of Substantive Due Process, 126 U.Pa.L.Rev. 344, 346–47 n. 4 (1977). Indeed, the "most important and widespread ordinary effects of marijuana are a feeling of relaxation, a sense of euphoria, and an impression that one's senses have somehow been sharpened . . . [I]t is as yet impossible in the laboratory to devise any mental test that will consistently reveal anyone to be under the influence of marijuana." *Id.* Marijuana has also been demonstrated to have extremely valuable uses in the treatment of anorexia nervosa, fever, pain, epilepsy, migraine headache, high blood pressure, psychosis, glaucoma, asthma, and leukemia. Soler, *supra* at 633.

(b) Though the legislative option of decriminalization of the possession of small amounts of marijuana is not before us, it is nevertheless noteworthy that relevant institutions, we are reliably informed, have indicated their acknowledgement of the relative harmlessness of marijuana by their support of decriminalization, specifically the American Bar Association, the American Medical Association, the Board of Governors of the Missouri Bar, the American Public Health Association, the National Conference of Commissioners on Uniform State Laws, the National Council of Churches, the National Educational Association, the American Civil Liberties Union, the National Association for Mental Health, Consumers Union, American Academy of

Family Physicians, the American Academy of Pediatrics, and such mainstream social critics as William F. Buckley, James J. Kilpatrick, Ann Landers and Art Linkletter.

(c) In 1974, only eight states, Arizona, California, Connecticut, Indiana, Missouri, Ohio, Texas and Virginia would have punished a defendant a minimum of five years for the sale of less than one half ounce of marijuana as a first offense. Soler, *supra* at 721–23. Today, that number is two: Missouri and Virginia, Va.Code § 18.2–248 (Supp.1977). The remaining 49 jurisdictions have penalties for this offense lesser than the one in Missouri.

(d) Under the new Missouri Criminal Code, Act 73, 1977 Mo.Legis.Serv. (Vernon), penalties for offenses against persons and property can be compared to this punishment of 5 years–life imprisonment. Those crimes and punishments are as follows: assault in the first degree committed with a deadly weapon or dangerous instrument, 10 years–life, the same committed without the deadly weapon or dangerous instrumentality, 5–15 years, § 565.050; assault in the second degree, 5 years or less, § 565.060; kidnapping, 10 years–life, § 565.110; rape with the infliction of serious physical injury or the display of a deadly weapon in a threatening manner, 10 years–life; rape without such injury or display, 5–15 years, § 566.030; sexual assault in the first degree with serious physical injury or the display of a deadly weapon in a threatening manner, 5–15 years; first degree sexual assault without such injury or display, 7 years or less, § 566.040; sodomy, or deviate sexual intercourse with another person who is less than fourteen years old, with serious physical injury or the display of a deadly weapon in a threatening manner, 10 years–life, sodomy without such injury or display, 5–15 years, § 566.060; robbery in the first degree, 10 years–life, § 569.020; robbery in the second degree, 5–15 years, § 569.030; arson in the first degree, 5–15 years, § 569.040; arson in the second degree, 7 years or less, § 569.050; burglary in the first degree, 5–15 years, § 569.160; burglary in the second degree, 7 years or less, § 569.170. Under Missouri's new statute relating to homicide offenses, Act 11, 1977 Mo.Legis.Serv. (Vernon), the crime of murder in the second degree is punishable by imprisonment for 10 years–life, § 4.2. Manslaughter in Missouri is punishable by a sentence ranging from a mere fine of $500 or less than 6 months in the county jail to imprisonment from 2–10 years. § 559.140, RSMo 1969.

We cannot ignore the illogic of the sanction which is here under scrutiny. The "objective indicia" speak loudly to us about the absence of a rational nexus between the crime which has been committed and the punishment which has been assessed. The Eighth Amendment gives us the power and the scope of judicial review over punishments alleged to be cruel and unusual. I, for one, find compelling and powerful the argument that we should invoke the dictates of that Amendment in this case, and I most respectfully regret that a majority of my colleagues do not agree. The punishment inflicted upon this young man for selling less than one half ounce of marijuana for $5.00—seven years in the state penitentiary—is cruel and unusual, if those two words have any meaning at all. I would reverse the judgment and discharge the defendant.

There is another factor here which I believe objective scrutiny requires that we forthrightly face. The generation of which I am a member experienced an era which was similar, in great respect, to the current one. Prohibition was the law in the 1920s but speakeasys were the fact. From this experience of punishing popular conduct we should appreciate the disrespect for law which follows. Coudert, Anti-prohibition Activities of the Bar: A Justification, 7 N.Y.U.L.Rev. 166, 167–68 (1929); Sawyer, Report on the Enforcement of the Prohibition Laws of the United States, 30 Mich.L. Rev. 7, 10–18 (1931).

When one generation irrationally uses the criminal sanction to coerce and intimidate another into rejecting a relatively harmless drug, marijuana, while openly promoting the use of what we know to be relatively

harmful drugs, alcohol and tobacco,[2] respect for law and the legal process suffers. The lives of young people should not be destroyed against an anvil of generational mistrust.

We must reconcile ourselves to a rational legal order.

SHANGLER, Special Judge, dissenting.

On full consideration, I cannot agree with the principal opinion.

The two questions which the appeal calls on us to decide are: (1) the validity of Schedule I of § 195.017 which classifies marihuana with heroin and other opiates and constitutes possession, transfer or sale of the substance a crime, and (2) whether the punishments for sale of marihuana under § 195.200 bear no rational relationship to the seriousness of the conduct and are, for that reason, unconstitutional, and as applied to defendant Mitchell cruel and unusual punishment. The majority rules in favor of the validity of each of these enact-

ments and of the punishment actually imposed. I disagree and dissent.

The first ground for appeal, more precisely, contends that marihuana bears no rational relationship to heroin or other opiates, and so Schedule I of § 195.017 which classifies the substances together—without distinction—as drugs with "high potential for abuse" punishes innocent and criminal conduct alike in violation of the equal protection clause of the United States Constitution.

The majority uses the rational relationship test as the standard to determine whether a statute infracts equal protection. In contemporary terms, the analysis laid down by the United States Supreme Court sustains a legislative classification "if the classification itself is rationally related to a legitimate governmental interest." *United States Department of Agriculture v. Moreno*, 413 U.S. 528, 533, 93 S.Ct. 2821, 2825, 37 L.Ed.2d 782 (1973). The purpose of our Narcotic Drug Act [Chapter 195] does not appear, in terms, from the enactment, and

2. "*Alcohol* is the only powerful self-administrated intoxicant used in the United States with social approval and without fear of criminal sanctions. The subjective effects of alcohol are well-known but the physical and psychological effects of the use of this drug have long been neglected or ignored. Alcohol operates in the body as a central nervous system depressant: its effects are very similar to those produced by the barbiturates. Tolerance develops from continued use, and discontinued use precipitates a severe withdrawal syndrome similar to that of barbiturate withdrawal and marked by hallucinations and delirium tremens which may lead to death. What is commonly called "alcoholism" is actually physical addiction to the drug alcohol. Alcohol abuse causes cirrhosis of the liver, which ranks seventh nationally as a cause of death. It also leads to kidney dysfunction, Korsakoff's psychosis, and hyperthyroid. Because alcohol supplies calories to the body, thus depressing the appetite without supplying needed vitamins and amino acids, alcohol abuse engenders nutritional deficiencies not common to other types of drug abuse. These nutritional deficiencies in turn make it more difficult for the alcoholic to withstand the stresses of the withdrawal syndrome. Perhaps the most dangerous characteristic of alcohol is the effect it produces on the user in his relations to the outside world. The feisty pugnaciousness of the tippler may be a joke; the hostile aggressiveness of the alcohol abuser is not. It has been estimated that of 120,000 American deaths in accidents each year, alcohol is a major factor in up to 70 percent. About 55 percent of all arrests involve alcohol-related offenses such as drunkenness, drunk driving, and violations of alcoholic beverage control statutes; more than half of those arrested for crimes of violence, such as murder and rape, acted under the influence of alcohol.

"*Tobacco* ranks with alcohol in widespread use among Americans; it is also the single major cause of heart and blood vessel disorders and cancer, which are the two most common causes of death in America. Nicotine, the primary active substance in tobacco, is a central nervous system stimulant similar to the amphetamines in its general effects. The harmful characteristics of nicotine are well-known. In addition to heart and blood vessel disorders and cancer of the lungs, mouth, larnyx and esophagus, tobacco smoking may also cause chronic bronchitis, emphysema and loss of vision (tobacco amplyopia). It is clear that tolerance develops to the use of nicotine and there is strong evidence that the phenomena accompanying discontinued use of tobacco constitute a withdrawal syndrome characteristic of true addiction." (supporting footnotes omitted) Soler, *Of Cannabis and the Courts: A Critical Examination of Constitutional Challenges to Statutory Marijuana Prohibitions*, 6 Conn.L. Rev. 601, 617–19 (1974).

so—as the principal opinion suggests—we look to the federal Comprehensive Drug Abuse Prevention and Control Act of 1970 which our Act follows for expression of the legislative interest. The federal Act publishes the Principal Purpose of the Bill as a design to "deal in a comprehensive fashion with the growing menace of drug abuse in the United States" through efforts in drug abuse prevention and rehabilitation of users and, among other means, "by providing for an overall balanced scheme of criminal penalties for offenses involving drugs."

The rationality of § 195.017 as it relates to the control of marihuana, therefore, depends upon the statutory postulate [§ 195.-017.1(1)] that the substance "has high potential for abuse" so that unless prohibited by criminal sanction the substance presents a menace to the public safety comparable to that which results from the use of heroin or other opiates with which marihuana is classified. The simple question, therefore, is whether marihuana shares those qualities of heroin and other opiates known to cause destructive and dangerous behavior so as to justify the same legislative disapproval.

A criminal statute is clothed with a presumption of validity. At the outset of inquiry, a court assumes that a classification made by a criminal statute rests on a state of facts which supports that legislative determination. *Lindsley v. Natural Carbonic Gas Co.*, 220 U.S. 61, 78, 31 S.Ct. 337, 55 L.Ed. 69 (1911). The judicial inquiry into constitutionality, however, is not confined to that information available to the lawmaker at the time of enactment, but also on what since becomes available. And—as in this case—"when the validity of the law depends upon the truth of what is declared" [that marihuana affects behavior as an opiate and so has a high potential for abuse] the court has the duty to examine recent empirical data as that may bear on the presumption of the validity of the statute.

*Leary v. United States*, 395 U.S. 6, 53, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969); *Brown v. Board of Education*, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954).

The courts, no less than the populace, are victim to the mythology that marihuana is merely a prelude to immorality, criminal behavior and to the use of truly dangerous drugs. Soler, Cannabis and the Courts, 6 Conn.L.R. 601, 646 (1974). The earliest opinions reflect this mythos from the 1930 era to sustain classification of marihuana as a narcotic drug on those assumptions alone. *State v. Navaro*, 83 Utah 6, 26 P.2d 955 (1933); *United States v. Eramdjian*, 155 F.Supp. 914, 919 (S.D.Cal.1957). Although massive scientific studies [1] have since determined that marihuana, unlike a true opiate, is neither addictive, nor induces withdrawal symptoms, nor leads to a tolerance—but at worst leads to a psychological dependency less severe than that induced by alcohol—most courts continue to sustain the validity of the classification of marihuana with opiates on nothing more than the presumption of validity which clothes a criminal statute. *State v. Rao*, 171 Conn. 600, 370 A.2d 1310, 1314[6–9] (1976); *State v. Wadsworth*, 109 Ariz. 59, 505 P.2d 230, 234[2] (banc 1973); *Boswell v. State*, 290 Ala. 349, 276 So.2d 592, 596[5] (1973); *People v. Stark*, 157 Colo. 59, 400 P.2d 923, 927[6] (1965); *State v. Leppanen*, 252 Or. 352, 449 P.2d 447 (1969).

The empirical evidence now available dispels the concern that marihuana conduces to criminal behavior. The authorities agree that marihuana is not a narcotic. There is no tolerance from use which requires progressively larger quantities for satisfaction, nor the agony which accompanies withdrawal from an opiate. In short, there is no addiction to feed, nor the urgency for money for that purpose, if need be from illicit sources. Grinspoon, Marihuana Reconsidered I, note 1 at pp. 256–7 (1971); Pet

1. National Commission on Marihuana and Drug Abuse, Marihuana: A signal of Misunderstanding (1972) [The Shafer Report]; Second Annual Report to Congress from the Secretary of Health, Education and Welfare (1972 and 1973) [Second and Third HEW Reports]; Canadian Commission of Inquiry into the Non-Medical Use of Drugs (1972) [LeDain Report]. The Swedish, British and Australian Governments, among others, have also published commission reports on the role of marihuana and drug abuse.

and Ball, Marihuana Smoking in the United States, 32 Federal Probation 8 (No. 3, 1968). The postulations which classify marihuana with the opiates or even amphetamines and barbiturates, therefore, have lost whatever validity was ever due them. *People v. McCabe*, 49 Ill.2d 338, 275 N.E.2d 407, 411 (1971); *People v. Summit*, 517 P.2d 850 (Colo.1974).

The trial courts have been more faithful than the appellate courts in cases for the equal protection of the laws against arbitrary classification of marihuana with narcotics to the injunction of the United States Supreme Court that the proof of a statutory presumption is "highly empirical" [*Leary, supra,* 395 U.S. l.c. 38, 89 S.Ct. 1532; *Brown, supra,* 347 U.S. l.c. 494, 74 S.Ct. 686] and so open to the scrutiny of modern authority. In *State v. Rao,* 171 Conn. 600, 370 A.2d 1310 (1976) [relied on by the majority opinion] the Supreme Court of Connecticut went so far as to declare that the trial court had [l.c. 1314] "misconceived its function" by the determination of fact on expert witness testimony "the debatable medical issue" that "marihuana has virtually no harmful effect on the human system." The court went on to conclude that judicial determination that "a legislative enactment is invalid cannot rest upon a judicial determination of a debatable medical issue." In *State v. Wadsworth,* 109 Ariz. 59, 505 P.2d 230, l.c. 233 (banc 1973), the Supreme Court of Arizona conceded that marihuana did not fall within the scientific definition of narcotics but nevertheless refused to find a statute which classified them without distinction invalid on the premise that the mere legislative intent to proscribe marihuana was a sufficiently reasonable basis for criminal sanction and did not deny the purveyor of marihuana the equal protection of the laws. This "rationale" was expressly adopted in *Boswell v. State,* 290 Ala. 349, 276 So.2d 592, 597 (1973). Each of these decisions—approved specifically or by refer-

ence in the majority opinion—effectively employs the presumption of the validity of a criminal statute to sustain that very validity. They, thus, contradict the principle that "the constitutionality of a [criminal] statute predicated upon the existence of a particular state of facts may be challenged by showing to the court that those facts have ceased to exist." *United States v. Carolene Products Co.,* 304 U.S. 144, 153, 58 S.Ct. 778, 784, 82 L.Ed. 1234 (1938). The effect of the practice which excludes scientific evidence from the determination of whether the factual postulate for a criminal sanction remains valid is to place any equal protection of the laws challenge to a criminal statutory classification beyond the reach of judicial inquiry—unless it appears as a matter of law.

Those jurisdictions—increasing in number—which have given full consideration to the available empirical evidence on the issue have concluded with emphasis that by any reasonable standard marihuana cannot be classified as a narcotic. *State v. Zornes,* 78 Wash.2d 9, 469 P.2d 552 (banc 1970)[2]. That method was used in *People v. McCabe,* 49 Ill.2d 338, 275 N.E.2d 407 (1971) to strike down as unconstitutional the classification of marihuana with narcotics under the state Narcotic Drug Act. The precise question involved was whether punishment of marihuana under that Act rather than under the Drug Abuse Control Act, both of which proscribed the sale of marihuana, but which punished that offense disparately, violated the equal protection of the laws. The Narcotics Act imposed a mandatory minimum sentence of ten years for the first offense sale of marihuana, whereas the Drug Abuse Control Act which governed stimulant and depressant drugs imposed a maximum one year sentence for the same offense. The defendant was sentenced to a term of ten years imprisonment under the Narcotics Drug Act. In the course, of decision that the sentence denied the defendant the equal

---

2. The defendants Zornes had been convicted under a statute which classified marihuana as a narcotic. While the appeals pended the Washington legislature enacted a new drug control statute which applied to "addiction-forming lia-

bility" drugs but which specifically excluded marihuana from its provisions. That statute gives legislative recognition to the latest state of knowledge that marihuana is a relatively benign substance.

protection of the laws, the court first undertook [l.c. 409] "an assessment of the relevant scientific, medical and social data . . to judge whether the data presently available provides a reasonable basis for the described classification of marihuana." The court went on to a careful and meticulous evaluation of the evidence and discussed the effects of use of narcotics, noted the immediate effects of the drugs, the onset of addiction in the development of tolerance and withdrawal symptoms, the long-term physiological dangers from use, including death, and the relationship between narcotics use and crime. The court concluded [l.c. 410–411] "although marihuana has been commonly associated with the opiates . . there are important differences between the so-called abuse characteristics of the two . . . Almost all authorities agree that marihuana is not a narcotic or addictive in the sense that the term is precisely used. Unlike the opiate drugs, it does not produce a physical dependence, and upon abstention there are no withdrawal symptoms. A tolerance to the drug does not develop." On these considerations, the court found that neither the chemical qualities of the drugs nor their effects on the behavior of users provides any justifiable or reasonable basis for the classification as to conduct or penalty with the opiates.

The Supreme Court of Michigan in *People v. Sinclair,* 387 Mich. 91, 194 N.W.2d 878 (1972) agreed with *McCabe* that the true basis for the Michigan statute which classified marihuana with narcotics was to be determined by the available empirical data. After discussion of the extensive proof before the court on the comparative effects of marihuana use on the person and community as compared with the effects of other drug use, the court concluded [l.c. 881, 886 et seq.]

. . . there is no rational basis for classifying marihuana with the "hard narcotics," but, also, that there is not even a rational basis for treating marihuana as a more dangerous drug than alcohol.
We can no longer allow the residuals of that early misinformation to continue choking off a rational evaluation of marihuana dangers. That a large and increasing number of Americans recognize the truth about marihuana's relative harmlessness can scarcely be doubted.

The judicial willingness to consider the instruction of science and experience on the effects of marihuana and its proper status within our system of law has gained impetus. *English v. Miller,* 341 F.Supp. 714 (E.D.Va.1972), *rev'd sub nom. English v. Virginia Probation & Parole Board,* 481 F.2d 188 (4th Cir. 1973); *State v. Carus,* 118 N.J.Super. 159, 286 A.2d 740 (1972); *Sam v. State,* 500 P.2d 291 (Okl.Cr.1972). These decisions have rejected the traditional classification of marihuana with the narcotics on the instruction of present knowledge.

The majority opinion fails because it neglects to determine the true state of facts upon which the classifications of § 195.017 rests. The opinion acknowledges, but gives no effect to the considerable data appellant Mitchell has submitted on the issue. That evidence demonstrates that marihuana is a substance of relatively harmless character—certainly more benign than cigarette and alcohol use—and so is unreasonably classified by § 195.017 with the opiates and barbiturates. The court avoids this inquiry by the conclusion that "[a] body of knowledge does exist upon which the legislature could have rationally relied in deciding to classify marihuana in schedule I." The attack appellant Mitchell makes, however, is to the *present* [that is, at the time of the offense] justification for the classification, and not at the time of the enactment. The appellant offers to show that present state of facts [*United States v. Carolene Products, Inc., supra,* 304 U.S. l.c. 153, 58 S.Ct. 778] no longer support the assumptions of the original enactment. The majority opinion does not say what the purpose of the classification was at adoption nor how the evidence does not sustain the appellant on that issue. The determination that the classification remains justified and so should persist—as the majority holds—can only come after full consideration of the most contemporary and informative data.

The declaration of law can rest only on *a state of facts found and decided.* Otherwise any plausible assumption in favor of statutory validity, however hypothetical or fanciful, would be enough to foreclose judicial inquiry and defeat the equal protection the United States Constitution gives against an arbitrary criminal law.

I am convinced on impressive empirical authority that marihuana poses no threat to the public safety and welfare and less a danger to the person than that posed to the user of cigarettes and alcohol. There can be no reasonable basis to classify marihuana with narcotics or to penalize them alike. I would find that § 195.017 in its classification of marihuana violates the equal protection clause of the Fourteenth Amendment to the United States Constitution and is invalid.

At the very least, I would remand the proceedings to the trial court to allow appellant Mitchell to present full evidence on the qualities of marihuana as compared to the narcotics and other substances with which they are classified, the comparative effect of these substances on the persons of the users and the members of the community, and all other pertinent present state of facts which bear on the ultimate question of law: the validity or lack of validity of the classification. On such a record, an appellate court could then declare the law. I believe there is sufficient knowledge from authentic sources to make that declaration now, confidently, against the validity of the classification.

I would answer, also, the premise of the majority opinion that the category given to heroin and the opiates by separate subsection within Schedule I dispels inference of a common classification with marihuana. This overlooks that marihuana, heroin and the other substances within Schedule I are brought together within the statutory scheme according to the common descriptions [§ 195.017.1] that each:

 (1) has high potential for abuse, and

 (2) has no accepted medical use in treatment . . .

These are the fundamental characteristics the legislature requires a substance to possess precedent to the proscription under the law. The Act defines *opiate* as "any substance having an addiction-forming or addiction-sustaining liability." The opiates increase tolerance and require more and more quantity for satisfaction; the withdrawal symptoms are severe enough to induce illicit behavior for the purchase of drugs. Marihuana, on the other hand, is non-addictive and induces no aggressive behavior. It is simply irrational that marihuana should be classified with the opiates as substances of a like "high potential for abuse."

It is altogether inappropriate to say of marihuana that the substance "has no accepted medical use in treatment"—the other quality precedent to proscription under Schedule I of § 195.017. The cannabinoids have had very valuable uses in the treatment of numerous disorders: anorexia nervosa, glaucoma, high blood pressure, leukemia, among others. Soler, Cannabis and the Courts, 6 Conn.L.R. 601, 633 (1974). The legislature of New Mexico has very recently enacted a statute which permits a citizen access to marihuana for certain medicinal purposes such as treatment for glaucoma and as an aid to counteract the nausea of chemotherapy. [Controlled Substance Therapeutic Research Act, House Bill 329 33rd Legislature. Signed by the Governor, February 21, 1978]. The conclusion cannot be escaped that the classification scheme which includes marihuana within Schedule I of § 195.017 is arbitrary and irrational.

I dissent also because the sentence imposes constitutes cruel and unusual punishment. I comment on this only briefly but concur altogether in the thoughtful dissent of Judge Seiler. The majority allows to stand a seven year prison sentence for the sale of less than half an ounce of marihuana. The court, presumably, would redress the severity of the sentence had it found it "so disproportionate to the offense committed so as to shock the moral sense of all reasonable men as to what is right and proper under the circumstances." I believe the sentence given Mitchell produces that

shock. As the separate dissent of Judge Seiler says so well, the protection of the Eighth Amendment extends to sentences disproportionate to the crime committed on objective considerations, as well as those which offend the sense of decency. Although I welcome the departure by the majority from the prior rule that a punishment meted within the statutory limits shows per se validity, I believe the rule announced in *State v. Johnson,* 549 S.W.2d 348 (Mo.App.1977) and adopted by the majority falls short of the protection the Constitution gives.

In terms of public awareness, the sentence merely shows how vengefully the law treats a person who offends the "decency" of society as compared, for instance, with those who violate the trust of high public office. What makes this punishment even more stark is that a youth of the age of Mitchell—perhaps in circumstances not present—is frequently allowed the leniency of a probation which, when uneventfully served, expunges and forgets the judgment altogether.

I dissent and join in the separate dissent of Judge SEILER.