STATE of Missouri, Respondent,

v.

Paul J. McMANUS, Appellant.

No. 67694.

Supreme Court of Missouri,
En Banc.

Oct. 14, 1986.

Rehearing Denied Nov. 18, 1986.

Robert M. Ramshur, Piedmont, for appellant.

William L. Webster, Atty. Gen., John M. Morris, Asst. Atty. Gen., Timothy W. Anderson, Asst. Atty. Gen., Jefferson City, for respondent.

HIGGINS, Chief Justice.

Appellant questions the validity of section 195.017, RSMo 1978, which classifies marijuana as a Schedule I controlled substance. Paul McManus pleaded guilty to a charge of selling marijuana in violation of section 195.020, RSMo 1984, and was sentenced to five years imprisonment. He contends that the statutory classification of marijuana denies him equal protection and due process under the Missouri and United States Constitutions. Mo. Const., art. 1, § 2; Mo. Const., art I, § 10; U.S. Const., art. XIV, § 1. Affirmed.

At his preliminary hearing McManus moved to dismiss the charge and presented evidence of medical uses for tetrahydrocannibol (THC), the psychoactive ingredient in marijuana. The statute in question authorizes the Division of Health to place a substance in Schedule I if it "1) has a high potential for abuse; and 2) has no accepted medical use in treatment in the United States or lacks accepted safety for use in treatment under medical supervision." § 195.017, RSMo 1978. The motion to dismiss was overruled and McManus pleaded guilty to the charge under the precepts of *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

Appellant contends that no rational basis exists for the legislature's classification of marijuana in Schedule I. Under the rational basis test the classification in question need not be perfect so long as it is

not arbitrary and unreasonable. *Collins v. Director of Revenue,* 691 S.W.2d 246, 250 (Mo. banc 1985). The challenger bears the burden of overcoming the presumption of a statute's constitutionality. *Minnesota v. Clover Leaf Creamery Co.,* 449, U.S. 456, 101 S.Ct. 715, 66 L.Ed.2d 659 (1981). This Court may consider both the information before the legislature when it adopted the statute and information currently available. *Leary v. United States,* 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969); *State v. Mitchell,* 563 S.W.2d 18, (Mo. banc 1978). Because the legislature patterned the Missouri Narcotic Act after the Federal Drug Abuse Prevention and Control Act, legislative history and case law surrounding the federal statutes apply equally to the Missouri statutes. This Court may look to federal materials for guidance in the interpretation of section 195.017. *Mitchell,* 563 S.W.2d at 24.

■ Appellant interprets section 195.017.1, as requiring a finding that a substance have both a high potential for abuse and no accepted medical use. He does not claim that the second phrase of section 195.017.1(2) referring to the substance's safety for use in treatment applies in this case. The wording of the comparable federal statute, 21 U.S.C., section 812(b)(1)(1982), differs from Missouri's statute on this point. The federal statute lists three separate requirements without joining them by a conjunctive word. Missouri's statute separates the first and second factor with an "and," while joining the second and third factors with an "or." The federal courts interpret the federal statute as neither cumulative nor exclusive. *National Organization for the Reform of Marijuana Laws v. Bell,* 488 F.Supp. 123; *U.S. v. Fogarty,* 692 F.2d 542 (8th Cir. 1982). In *Fogarty* the court noted the eight factors the United States Attorney General must consider in classifying a drug, 21 U.S.C. section 811(c)(1)–(8)(1982), *Fogarty* at 548, n. 6. Although these same factors are present in section 195.015.1(1)–(8), RSMo 1978, the Missouri legislature altered the federal statutes sufficiently to change the process by which a substance is classified. Section 195.015.1 first requires that the decision maker consider the eight factors listed. It then requires a finding that the substance has a potential for abuse before any further action may be taken. Factors (2)–(8) are important in the initial determination of whether a drug should be scheduled. The accepted medical use factor, section 195.017.1 comes into play in deciding where to schedule the substance. The decision maker must decide that a substance has a potential for abuse and consider the remaining seven factors before considering the appropriate schedule for the substance. The next step necessarily requires that the decision maker find both requirements of section 195.017.1. For the purposes of the Missouri statute the factors in section 195.017.1 are cumulative.

Because both factors in section 195.017.1 are necessary to make a Schedule I substance and appellant does not contest the potential for abuse finding, this Court need determine only whether marijuana has an accepted medical use within the meaning of the statute. Appellant contends that section 195.060, RSMo 1978, is fatally inconsistent with section 195.017.1. Section 195.060.1 permits the dispensing of Schedule I controlled substances by certain professionals. He claims that if physicians may dispense Schedule I drugs through section 195.060 the finding that they have no accepted medical usefulness in section 195.017 cannot be founded upon a rational basis. This analysis fails to consider the meaning of the word "accepted" in section 195.017.1. All the evidence, including expert testimony, shows that the medical uses for the THC in marijuana are still in the investigational stage. 47 Fed.Reg. 28,151 (1982). Appellant's expert witness admitted that the medical community as a whole, does not accept the medical usefulness of marijuana.

Appellant attempts to distinguish *State v. Mitchell,* 563 S.W.2d 18, which upheld the constitutionality of section 195.017 in 1978. He contends that the state of medical knowledge has advanced since *Mitchell*

and asserts that marijuana now has accepted medical uses. He relies upon the recent developments with respect to synthetic THC to show the medical acceptability of marijuana. He states that the only difference between synthetic THC and the natural THC found in marijuana lies in the greater certainty in controlling the dosage for synthetic THC. He argues that synthetic THC has an accepted medical use evidenced by the federal reclassification as a Schedule II substance, and therefore marijuana must also have an accepted medical use. 51 Fed.Reg. 17,476 (1986).

The difference noted by appellant between synthetic THC and marijuana becomes important under the Food and Drug Administration's interpretation of an accepted medical use. The FDA requires a determination that a drug is both safe and effective, before it is approved under the Federal Food, Drug and Cosmetic Act. 21 U.S.C. §§ 351–360dd. The drug must have a composition of ingredients that is established and accepted as standard. 47 Fed. Reg. 28,151 (1982). The synthetic THC which the federal government recently rescheduled[1] has established and standard ingredients. 51 Fed.Reg. 17,476 (1986). The level of THC in marijuana, however, is not standardized. The level varies depending upon a variety of factors from where it was grown to the time of day it was harvested. 47 Fed.Reg. 28,141 (1982). Because the level of the THC cannot be standardized and controlled, the medical usefulness of the drug is limited. Until scientists can control the level of THC in marijuana as required by the FDA's standards, marijuana will not have an accepted medical use but will remain an investigational drug properly continued in Schedule I.

The foregoing shows a rational basis for the classification of marijuana as a Schedule I controlled substance, § 195.017, and McManus's conviction pursuant to section 195.020 and 195.017 does not violate his equal protection and due process rights.

The judgment of the trial court is affirmed.

All concur.

---

1. This rescheduling does not cause additional problems with the classification because section 195.015.4, RSMo 1978, provides for the rescheduling of substances when the federal statutory scheme changes.